OPINION OF THE COURT
 

 Titone, J.
 

 In 1882, this Court held that a common carrier is liable to passengers for the torts of its employees regardless of whether those torts were committed within or outside the scope of their employment
 
 (Stewart v Brooklyn & Crosstown R. R. Co.,
 
 90 NY 588). This appeal requires us to determine whether the New York City Transit Authority may be held liable under this holding for injuries sustained by a subway rider as a result of
 
 *118
 
 an unprovoked attack by a Transit Authority token booth clerk. Concluding that the liability rule enunciated in 1882 is no longer viable as a matter of law or policy, we hold that the token booth clerk’s assaultive conduct, which was indisputably outside the scope of her employment, does not give rise to vicarious liability on the part of her employer.
 

 According to the complaint allegations and deposition testimony, plaintiff Margaret Adams was waiting in line to purchase a subway token when she heard the clerk inside the token booth yelling at the man immediately in front of her. After the man walked away, plaintiff stepped up to the booth, slid her fare through the opening in the window and asked for directions to her destination. Inexplicably, the clerk responded with a barrage of verbal abuse.
 

 Shocked by the clerk’s reaction, plaintiff walked away from the booth, placed her token in the slot and attempted to proceed through the turnstile. Her movement was interrupted, however, when she was assaulted from behind by the token clerk, pushed to the ground and choked. The incident ended when plaintiff’s companion, who had been waiting on line with her, called for help and obtained the assistance of a man who pulled the assailant away from plaintiff. According to plaintiff, she suffered physical and emotional injury as a result of the assault.
 

 Plaintiff commenced the present action for damages against the Transit Authority, alleging several causes of action.
 
 *
 
 On cross motions for summary judgment, plaintiff’s claims based on negligent hiring, training and supervision and the Authority’s alleged acquiescence in its employee’s misconduct were dismissed for lack of factual or legal support. The Supreme Court concluded, however, that plaintiff had established entitlement to summary judgment on her cause of action that was based on defendant Authority’s breach of its carrier’s duty to provide its passengers with transportation " 'free from insults or assaults by [its employees]’ ” (quoting PJI 2:239).
 

 On defendant Authority’s appeal, the Appellate Division reversed this aspect of Supreme Court’s ruling and modified its order accordingly by dismissing plaintiff’s remaining cause of action. After reviewing the legal history of the special common-carrier rule of vicarious liability on which the Supreme Court relied, the Appellate Division concluded that the rule was no
 
 *119
 
 longer viable. This appeal, taken by permission of the Appellate Division, ensued. We now affirm.
 

 As a general rule, employers are held vicariously liable for their employees’ torts only to the extent that the underlying acts were within the scope of the employment (see,
 
 e.g., Riviello v Waldron,
 
 47 NY2d 297;
 
 Cornell v State of New York,
 
 46 NY2d 1032, 1033;
 
 Sauter v New York Tribune,
 
 305 NY 442;
 
 Higgins v Watervliet Turnpike Co.,
 
 46 NY 23). The scope-of-employment limitation on employers’ vicarious liability is a logical consequence of the policies underlying the vicarious liability doctrine itself. The modern justification for the doctrine lies in the view that "[t]he losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer’s enterprise,” are most fairly allocated to the employer "as a required cost of doing business” (Prosser and Keeton, Torts § 69, at 500 [5th ed]). It follows from this rationale that torts which are outside the scope of employment and are therefore not part of the "conduct of the employer’s enterprise” should not be made the responsibility of the employer.
 

 One particularly significant exception to the general rule is the expansive liability that has been imposed on common carriers for the torts of their employees. In
 
 Stewart v Brooklyn & Crosstown R. R. Co. (supra),
 
 this Court held that carriers are liable for their employees’ torts regardless of whether those torts were committed within the scope of employment. The
 
 Stewart
 
 decision was premised principally on the carrier’s implicit contract with its passengers, which was held, as a matter of law, to require the carrier to transport its passengers " 'safely and properly, and to treat [them] respectfully’ ” (90 NY, at 591, quoting
 
 Goddard v Grand Trunk Ry.,
 
 57 Me 202). An assault on a passenger by a carrier’s employee constituted a breach of this contractual duty and, in the
 
 Stewart
 
 Court’s view, should therefore be actionable without regard to the relationship between the employee’s conduct and the master’s business.
 

 In subsequent cases applying the rule, the Court retained the breach of contract theory but also acknowledged the rule’s equally important underpinnings in tort law
 
 (Busch v Interborough R. T. Co.,
 
 187 NY 388;
 
 Gillespie v Brooklyn Hgts. R. R. Co.,
 
 178 NY 347;
 
 see also, Dwinelle v New York Cent. & Hudson Riv. R. R. Co.,
 
 120 NY 117). Modern authorities have recognized that the special duty of a common carrier to its passengers is a tort-based duty rather than an obligation derived
 
 *120
 
 from an implied contract between the carrier and the passenger (Prosser and Keeton,
 
 op. cit,
 
 § 12, at 57-58;
 
 see also, Webber v Herkimer & Mohawk St. R. R. Co.,
 
 109 NY 311;
 
 Loeher v East Side Omnibus Corp.,
 
 259 App Div 200,
 
 affd
 
 287 NY 670). As one court has noted in a somewhat different context, " 'the tickets [issued by a carrier to a passenger] do no more than evidence a relation of common carrier and passenger for hire; it is the law of torts that imposes the standard of care and responsibility appropriate to the carrier-passenger relationship, but that standard, and any consequent liability, are not creatures of contract’ ”
 
 (Gelfand v Tanner Motor Tours,
 
 339 F2d 317, 322). Accordingly, if the special rule adopted in
 
 Stewart
 
 is to retain its force in our contemporary body of law, it must find some justification in modern tort principles.
 

 Consideration of the broad policies underlying the vicarious liability doctrine does not reveal such a justification. Where an unprovoked assault or other intentional tort committed by a carrier’s employees is determined to be outside the scope of the actor’s employment, it is, by definition, not of the kind of activity that is "as a practical matter * * * sure to occur in the conduct of the [carrier’s] enterprise” (Prosser and Keeton,
 
 op. cit.,
 
 at 500). Thus, it makes no more sense to treat the cost of such misconduct as "a required cost” of the carrier’s business
 
 (see, id.)
 
 than it would to treat the same class of misconduct as a required cost of the business of a restaurateur, storekeeper or any other class of proprietor.
 

 Since the general vicarious-liability principles that are applicable to all employers do not suggest a sound basis for the
 
 Stewart
 
 rule, its justification, if any, must be found in the special characteristics of common carriers. The lengthy history of the law’s attempt to address common-carrier liability suggests several possibilities. However, as the Appellate Division correctly found, none of these furnishes a wholly satisfactory ground for applying the 100-year-old
 
 Stewart
 
 rule to contemporary controversies.
 

 In the past, carriers were held subject to a higher duty of care, and terms like "absolute liability” and "duty of an
 
 absolute
 
 nature” were often used to explain why "the usual distinctions which attend the doctrine of
 
 respondeat superior
 
 cut little or no figure” in cases involving common-carrier liability
 
 (Gillespie v Brooklyn Hgts. R. R. Co., supra,
 
 at 354 [emphasis in original], quoting Thompson, Negligence § 3186;
 
 see,
 
 3 Harper, James and Gray, Torts § 16.14 [2d ed]; Prosser and Keeton,
 
 op. cit.,
 
 §§ 56, 70, 92). However, the higher duty of
 
 *121
 
 care imposed on carriers has been subject to considerable criticism
 
 (see, McLean v Triboro Coach Corp.,
 
 302 NY 49; 3 Harper, James and Gray,
 
 op. cit.,
 
 § 16.14; Prosser and Keeton,
 
 op. cit.,
 
 § 56) and is no longer applied in many quarters
 
 (see, Lesser v Manhattan & Bronx Surface Tr.Operating Auth.,
 
 157 AD2d 352, 355,
 
 affd
 
 79 NY2d 1031;
 
 Braceo v Manhattan & Bronx Surface Tr. Operating Auth.,
 
 117 AD2d 273, 278;
 
 Kermarec v Compagnie Generale Transatlantique,
 
 358 US 625;
 
 Plagianos v American Airlines,
 
 912 F2d 57;
 
 Rainey v Pacquet Cruises,
 
 709 F2d 169; PJI 2:161). Moreover, there is no real logical connection between a carrier’s higher duty of care and the imposition of "absolute” liability for the unforeseeable acts of employees that are both beyond the employer’s control and outside the reasonable scope of the employer’s enterprise.
 

 Further, the apparent historic underpinnings of the carrier’s absolute liability for employee misconduct are of dubious validity under current social and legal conditions. Any analogy between the carrier’s absolute responsibility as a bailee of inanimate goods and its responsibility to human passengers
 
 (see, Rabon v Guardsmark, Inc.,
 
 571 F2d 1277, 1281, n 5) has long been discredited
 
 (see,
 
 Kaczorowski,
 
 The Common-Law Background of Nineteenth-Century Tort Law,
 
 51 Ohio St LJ 1127, 1157-1158;
 
 see also, Boyce v Anderson,
 
 2 Pet [27 US] 150). Similarly, although the special hazards once posed by rail travel have sometimes been cited as an important source of the absolute liability imposed on carriers
 
 (see, Philadelphia & Reading R. R. Co. v Derby,
 
 14 How [55 US] 468, 486-487;
 
 Vanderhule v Berinstein,
 
 285 App Div 290, 297), that rationale has long since become outdated as public conveyances like trains, planes and boats have become at least as safe as private modes of travel. Moreover, even if travel by common carrier could still fairly be regarded as an especially hazardous activity, that circumstance would not provide a persuasive explanation for the
 
 Stewart
 
 rule’s retention, since the risks arising from the independent non-work-related tortious actions of an employee are unrelated to the hazards of travel and, in fact, are essentially the same regardless of whether the individual is hurtling through a subway tunnel or is instead leisurely sipping a cup of coffee in a quiet restaurant.
 

 The status of passengers as helpless prisoners confined within the carriers’ travel compartments is another factor that has been mentioned in support of the absolute liability rule
 
 (see, Lopez v Southern Cal. R. T. Dist.,
 
 153 Cal App 3d 1135, 200 Cal Rptr 779,
 
 revd on other grounds
 
 40 Cal 3d 780, 710 P2d
 
 *122
 
 907;
 
 Derwort v Loomer, 21
 
 Conn 245, 253, 254;
 
 see generally,
 
 Wheat,
 
 Liability of Carrier to Passengers for Injuries by its Servants,
 
 14 Mich L Rev 626, 642; Comment,
 
 Strict Liability or Negligence: What Standard of Care Applies When Crew Members Assault Passengers on Cruise Ships,
 
 19 Tul Mar LJ 353). Like the ultrahazardous activity rationale, this theory proves too much. As one court has noted, the same factors that appear to enhance the risk of assault in public conveyances, i.e., the difficulty of escape and the involuntary exposure to many strangers, may actually operate as deterrents to would-be wrongdoers and thereby reduce the risk of harm from third-party attacks
 
 (Jaffess v Home Lines,
 
 1988 WL 42049 [SD NY]). Furthermore, modern life includes a host of other situations in which a consumer of services, such as a hospital patient or movie theater patron, might be confined to a limited area or find his or her movements similarly curtailed. It is doubtful that a court today would hold the proprietor of these classes of enterprises absolutely liable for an employee’s intentional torts solely because of the existence of those conditions
 
 (see, Cornell v State of New York, supra; Moritz v Pines Hotel,
 
 52 AD2d 1020;
 
 Tobin v Slutsky,
 
 506 F2d 1097).
 

 Finally, the former absolute duty of carriers to protect their passengers from criminal attacks by third parties is an unconvincing reason for imposing absolute liability for assaults by employees. Since this Court decided
 
 Basso v Miller
 
 (40 NY2d 233) in 1976, landowners have been absolved of the heightened duties of care that they previously owed their business invitees and guests.
 
 Basso’s
 
 holding undermines the basic notion that owners of particular businesses should be held to special or different duties of care that are determined solely by their relationship to or the status of the injured party. Moreover, where governmentally operated carriers like the Transit Authority are concerned, the premise that carriers should be liable at all for third-party criminal assaults has been drastically curtailed
 
 (see, Weiner v Metropolitan Transp. Auth.,
 
 55 NY2d 175). Thus, the theoretical predicate for the third-party liability rule has itself been substantially eroded.
 

 Even more importantly, the
 
 Stewart
 
 Court’s reasoning on the point is fundamentally flawed. The Court concluded in
 
 Stewart
 
 that carriers should be held liable for the irrational and gratuitous
 
 intentional
 
 misconduct of their employees, since it would be anomalous to deny liability in those circumstances while imposing liability when an employee
 
 negligently
 
 permits a passenger to be attacked by a stranger. First, this syllogism,
 
 *123
 
 if valid, is as pertinent to all other service enterprises as it is to common carriers and is therefore not a sound basis for a special rule for the common carriers. Second, the syllogism is logically defective because it overlooks that liability in situations involving employee negligence requires the existence of an analytically critical fact not present in cases involving gratuitous intentional employee misdeeds, i.e., employee misconduct occurring
 
 within the scope
 
 of employment. As previously noted, it is only that condition that justifies the imposition of vicarious liability on an otherwise faultless employer.
 

 In this case, plaintiffs only cause of action against the Transit Authority that was not dismissed for want of proof is her claim based on the Authority’s vicarious liability for the tortious acts of its employee. Plaintiff does not contend that those acts were within the scope of her assailant’s employment and, accordingly, her claim depends wholly on the special rule of "absolute liability” that was previously applied to carriers under
 
 Stewart v Brooklyn & Crosstown R. R. Co. (supra).
 
 Since that rule is no longer viable, we conclude that plaintiff’s remaining cause of action was properly dismissed.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.
 

 *
 

 Plaintiff also sued the token booth clerk, Christine Bowman, but Bowman has apparently never appeared in the action.