OPINION OF THE COURT
Chief Judge Kaye.
On November 9, 1995, ’plaintiff entered a stairway leading down to the subway station at Columbus Circle between Broadway and Central Park West in Manhattan. She claims that as she descended, her foot caught under a metal strip at the edge of the third step from the bottom and she fell forward, injuring her wrist and knee. Plaintiff brought suit against the New York City Transit Authority and the Metropolitan Transit Authority, alleging inadequate maintenance of the stairway. Supreme Court granted defendants’ motion for summary judgment and dismissed the complaint, concluding that defendants neither own nor have any legal responsibility for the stairway. The Appellate Division affirmed, holding that defendants submitted sufficient evidence to establish that they did not own the stairway and that as a mere common user of the stairway, defendants were under no duty to maintain the stairway for the benefit of their patrons. We now reverse and deny summary judgment.
The dispute in the courts below centered on how to apply a rule first articulated by Appellate Term nearly a century ago in Schlessinger v Manhattan Ry. Co. (49 Misc 504 [1906]). In that case, plaintiff was injured on a stairway that was owned and maintained by the City of New York but used by passengers to access defendant railway company’s train platform. *358 The court held that a railway company’s duty to provide safe approaches for its passengers applies not only to approaches owned by the company but also to those owned by other entities “if constantly and notoriously used by passengers as a means of approach” (id. at 505). The court held that constant use of a particular approach as a means of access to the train indicates at least an implied invitation by the railway to passengers to use that approach, and such invitation creates a duty on the part of the railway company to keep it safe.
Building upon that rule, several trial court and Appellate Division decisions since Schlessinger have held that where a stairway is used “solely” or “constantly” to provide passengers access to a subway station, the transit authority has a duty to keep the stairway in safe condition, or at least give such warning as would protect those using the stairway against unforeseen danger, regardless of who actually owns or controls the stairway (see e.g. Haberlin v New York City Tr. Auth., 228 AD2d 383, 385 [1st Dept 1996]; Bruno v Vernon Park Realty, 2 AD2d 770, 771 [2d Dept 1956]). Courts have not applied the rule where the stairway is used as a means of access to businesses or tenants in addition to the subway (see O’Hara v New York City Tr. Auth., 248 AD2d 138, 140 [1st Dept 1998]).
Defendants here sought summary judgment on the ground that the stairway in the present case was owned by another party and used for purposes in addition to subway access, and they therefore have no responsibility for plaintiffs injury. In support of their motion, defendants submitted a 1971 agrees ment with the property owner granting them an easement for the subway station, a blueprint of the station and several unpublished decisions summarily dismissing complaints in similar cases. Defendants also submitted an affidavit (with supporting photographs) from their trial counsel reporting her personal observation that in 1991 — four years before plaintiffs fall — the stairway in issue was used to access other businesses in addition to the subway. In opposition, plaintiff submitted the affidavit of her daughter, who was with her at the time of the accident, asserting that she observed no stores or businesses operating in the subway station near the stairway, and that the entire area was then under construction.
Defendants’ submissions are insufficient to establish, for purposes of summary judgment, that they were merely a common user of the stairway in question. Trial counsel’s affidavit speaks only to use of the area four years before plaintiffs fall, and it is controverted by the affidavit of plaintiffs daughter, *359 who at the time of the accident saw no other businesses operating in the subway station. Thus, applying the Schlessinger rule — as this record compels us to — an issue of fact has been raised as to the alleged common use of the stairway and summary dismissal of the complaint was improper.
Defendants now add a new argument. Citing our decisions in Bethel v New York City Tr. Auth. (92 NY2d 348 [1998]), Kaufman v Silver (90 NY2d 204 [1997]) and Adams v New York City Tr. Auth. (88 NY2d 116 [1996]), defendants in an extensive submission to this Court for the first time urge that the Schlessinger rule should be abandoned and that common carriers should be free of liability for defects on property owned by another unless they have a right of control over such property. Defendants argue that this is purely an issue of law that can be addressed even if raised for the first time on appeal.
As we have many times repeated, this Court with rare exception does not review questions raised for the first time on appeal. Unlike the Appellate Division, we lack jurisdiction to review unpreserved issues in the interest of justice. A new issue — even a pure law issue — may be reached on appeal only if it could not have been avoided by factual showings or legal countersteps had it been raised below (see Telaro v Telaro, 25 NY2d 433, 439 [1969]). The sound policy reasons that underlie this principle are especially acute when the new issue seeks change in a long-established common-law rule.
These are not empty technicalities. Rather, they are “at the core of the distinction between the Legislature, which may spontaneously change the law whenever it perceives a public need, and the courts which can only announce the law when necessary to resolve a particular dispute between identified parties” (Lichtman v Grosshard, 73 NY2d 792, 795 [1988]). Moreover, in making and shaping the common law — having in mind the doctrine of stare decisis and the value of stability in the law — this Court best serves the litigants and the law by limiting its review to issues that have first been presented to and carefully considered by the trial and intermediate appellate courts.
Had defendants’ new argument been presented below, plaintiff would have had the opportunity to make a factual showing or legal argument that might have undermined defendants’ position. Additionally, this Court in its evaluation of the Schlessinger rule would have benefitted from the wisdom of the trial court and Appellate Division, courts which have seen many cases like this one in the 97 years since Schlessinger.
*360 In that the continuing validity of the Schlessinger rule was not properly put in issue by defendants, we express no view on its merits.
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendants’ motion for summary judgment denied.
Judges Smith, Ciparick, Wesley, Rosenblatt, Graffeo and Read concur.
Order reversed, etc.