[864 NE2d 49, 832 NYS2d 125]

Ina Jean Bingham, Respondent, v New York City Transit Authority et al., Appellants.

Argued January 4, 2007; decided February 15, 2007

## POINTS OF COUNSEL

*Lawrence Heisler*, Brooklyn, and *Wallace D. Gossett* for appellants. I. The rule obligating common carriers, and only common carriers, to maintain and repair property they neither own nor control, the only liability theory submitted to the jury, cannot be reconciled with principle or recent precedent. Since plaintiff fell on property which the New York City Transit Authority neither controlled nor had a right to maintain, she had no case against it. (*Adams v New York City Tr. Auth.*, 88 NY2d 116; *Bethel v New York City Tr. Auth.*, 92 NY2d 348; *Ritto v Goldberg*, 27 NY2d 887; *Chapman v Silber*, 97 NY2d 9; *Juarez v Wavecrest Mgt. Team*, 88 NY2d 628; *Putnam v Stout*, 38 NY2d 607; *City of Rochester v Campbell*, 123 NY 405; *Poirier v City of Schenectady*, 85 NY2d 310; *Kaufman v Silver*, 90 NY2d 204; *D'Ambrosio v City of New York*, 55 NY2d 454.) II. Plaintiff failed to carry her burden of proving that the New York City Transit Authority was liable under the common carrier rule. Plaintiff failed to prove that the stairway was used for subway-related purposes, whether exclusively, the correct view, or even predominantly, plaintiff's understanding of the rule. (*Strouse v United Parcel Serv.*, 277 AD2d 993; *S.L. Benfica Transp., Inc. v Rainbow Media, Inc.*, 13 AD3d 348; *Sackman-Gilliland Corp. v Senator Holding Corp.*, 43 AD2d 948; *Meekins v Town of Riverhead*, 20 AD3d 399.) III. The trial court erred in charging the jury that under the common carrier doctrine, the New York City Transit Authority could be liable if the stairway was "constantly" or "notoriously" used as a pathway into the station. Thus, even if the common carrier doctrine remains sound, and even if a jury might have found that the stairway was used exclusively by subway passengers, the erroneous charge mandates a new trial. (*Fortson v New York City Tr. Auth.*, 111

AD2d 58; *Garcia v Arbern Realty Co.*, 89 AD2d 616; *Ceron v City of New York*, 277 AD2d 7; *Pena v New York City Tr. Auth.*, 237 AD2d 150.) IV. The Metropolitan Transportation Authority, whose role is limited to financing and planning, cannot be liable for a tort allegedly committed by the New York City Transit Authority. (*Soto v New York City Tr. Auth.*, 6 NY3d 487; *Cusick v Lutheran Med. Ctr.*, 105 AD2d 681; *Adams v New York City Tr. Auth.*, 140 AD2d 572.)

*Ginsberg & Katsorhis, P.C.*, Flushing (*Kerry John Katsorhis* of counsel), for respondent. I. Under long-standing precedent in this Court, defendant-appellant New York City Transit Authority has a duty to use reasonable care to maintain the safety of or to warn of hazardous conditions existing on a stairway constantly and notoriously used by its passengers as a means of approach to its subway station. (*O'Hara v New York City Tr. Auth.*, 248 AD2d 138; *Fortson v New York City Tr. Auth.*, 111 AD2d 58; *Bruno v Vernon Park Realty*, 2 AD2d 770; *Schlessinger v Manhattan Ry. Co.*, 49 Misc 504; *Ceron v City of New York*, 277 AD2d 7; *Pena v New York City Tr. Auth.*, 237 AD2d 150; *Haberlin v New York City Tr. Auth.*, 228 AD2d 383; *Calamari v New York City Tr. Auth.*, 159 Misc 2d 195; *Lewis v Metropolitan Transp. Auth.*, 99 AD2d 246, 64 NY2d 670.) II. Defendants-appellants exercise control over the stairway at issue pursuant to their easement. (*Kaufman v Silver*, 90 NY2d 204; *Sutera v Go Jokir, Inc.*, 86 F3d 298; *Bethel v New York City Tr. Auth.*, 92 NY2d 348; *Lewis v Metropolitan Transp. Auth.*, 99 AD2d 246, 64 NY2d 670; *Lafflin v Buffalo & S.W. R.R. Co.*, 106 NY 136.) III. Defendants-appellants' easement constitutes an independent basis for liability under the special use doctrine. (*Kaufman v Silver*, 90 NY2d 204.) IV. Defendants-appellants' easement constitutes an independent basis for liability in itself. (*Sutera v Go Jokir, Inc.*, 86 F3d 298; *Piluso v Bell Atl. Corp.*, 305 AD2d 68; *Herman v Roberts*, 119 NY 37; *Tagle v Jakob*, 97 NY2d 165; *Greenfarb v R. S. K. Realty Corp.*, 256 NY 130, 678; *Cesario v Chiapparine*, 21 AD2d 272; *Trustees of Town of Southampton v Jessup*, 162 NY 122; *Taylor v Millard*, 118 NY 244; *Raksin v Crown-Kingston Realty Assoc.*, 254 AD2d 472; *Thomassen v J&K Diner*, 152 AD2d 421, 76 NY2d 771.) V. The jury charge given by the court below was taken directly from the Court of Appeals' decision in this case. VI. Defendants-appellants' attempt to distinguish between the New York City Transit Authority and the Metropolitan Transportation Authority was not preserved for appeal. (*Cusick v Lutheran Med. Ctr.*, 105 AD2d 681; *Soto v New York City Tr. Auth.*, 6 NY3d 487; *Adams v New York City Tr. Auth.*, 140 AD2d 572.)

**OPINION OF THE COURT**

PIGOTT, J.

In November 1995, plaintiff Ina Jean Bingham was injured when she fell while descending a stairway used as a means of access to and egress from the New York City subway. Plaintiff alleges that her foot caught on a metal strip protruding from one of the steps, causing her fall. She brought suit against the New York City Transit Authority and the Metropolitan Transportation Authority (collectively the Transit Authority), asserting, among other things, failure to keep and maintain the stairway in a proper and safe condition and failure to provide notice or warning of the defective condition.

The Transit Authority moved to dismiss the complaint arguing it neither owned nor maintained the stairway. Supreme Court granted the motion dismissing plaintiff's complaint, and the Appellate Division affirmed, holding that the Transit Authority established that it did not own the stairway and that, as a mere common user of the stairway, it was under no duty to maintain it for the benefit of its patrons.

This Court granted leave, reversed the Appellate Division's order and reinstated the complaint, holding that the Transit Authority's submissions were insufficient to establish that it was merely a common user of the stairway in question. We declined to reach the more fundamental issue raised by the Transit Authority, i.e., whether the common carrier rule, as stated in *Schlessinger v Manhattan Ry. Co.* (49 Misc 504 [1906]), should be abandoned in light of this Court's decisions in *Adams v New York City Tr. Auth.* (88 NY2d 116 [1996]), *Kaufman v Silver* (90 NY2d 204 [1997]), and *Bethel v New York City Tr. Auth.* (92 NY2d 348 [1998]), because that argument had not been preserved for our consideration (*see Bingham v New York City Tr. Auth.*, 99 NY2d 355 [2003]).

Following our decision, the matter proceeded to trial before a jury. At the conclusion of proof, the Transit Authority requested Supreme Court to charge the jury that, unless plaintiff had established that the stairway was used exclusively for subway purposes, she had failed to state a cause of action and her suit should be dismissed. Plaintiff, on the other hand, requested a charge that the Transit Authority would be liable if at the time of plaintiff's fall, the stairway was used by passengers constantly and notoriously as a means of approach. Supreme Court rejected the Transit Authority's argument, and charged the jury as requested by plaintiff.

The jury returned a verdict in favor of plaintiff and the Transit Authority appealed. The Appellate Division modified by vacating the award for pain and suffering and remanding the matter for a new trial solely on the issue of damages unless plaintiff stipulated to a reduced award. Plaintiff so stipulated and a judgment was entered on the stipulation. This Court granted leave from that judgment to bring up for review the Appellate Division order, and we now affirm.

Courts have long recognized that the duty of care imposed on a common carrier with respect to its passengers requires not only that it keep the transportation vehicle safe, but also that it maintain a safe means of ingress and egress for the use of its passengers (*see Kelly v Manhattan Ry. Co.*, 112 NY 443 [1889]). This duty has been applied to those areas owned and maintained by others if "constantly and notoriously" used by passengers as means of approach (*see Schlessinger v Manhattan Ry. Co.*, 49 Misc 504, 505 [1906]). This rule, as enunciated in *Schlessinger*, has been recognized not only in New York (*see Ambriano v Town of Oyster Bay*, 266 AD2d 415 [2d Dept 1999]; *Haberlin v New York City Tr. Auth.*, 228 AD2d 383 [1st Dept 1996]; *Fortson v New York City Tr. Auth.*, 111 AD2d 58 [1st Dept 1985]; *Bruno v Vernon Park Realty*, 2 AD2d 770, 771 [2d Dept 1956]), but also in other jurisdictions (*see e.g. Buchner v Erie R.R. Co.*, 17 NJ 283, 111 A2d 257 [1955]; *Cotant v Boone Suburban Ry. Co.*, 125 Iowa 46, 99 NW 115 [1904]; *Skottowe v Oregon Short Line & U.N. Ry. Co.*, 22 Ore 430, 30 P 222 [1892], *affd* 162 US 490 [1896]; *Beard v Connecticut & Passumpsic Rivs. R.R. Co.*, 48 Vt 101 [1875]).

Several courts, in interpreting this rule, have held that the duty applies only where an approach is used "exclusively" to provide passengers access to the carrier (*see O'Hara v New York City Tr. Auth.*, 248 AD2d 138 [1st Dept 1998]; *Haberlin*, 228 AD2d 383 [1996]). These courts have not applied the rule where the approach was used as a means of access to businesses or tenants in addition to the carrier (*see e.g. O'Hara*, 248 AD2d 138 [1998]; *Pena v New York City Tr. Auth.*, 237 AD2d 150 [1st Dept 1997]; *see also Valladares v New York City Tr. Auth.*, 208 AD2d 471 [1st Dept 1994]).

Where, as here, a stairwell or approach is primarily used as a means of access to and egress from the common carrier, that carrier has a duty to exercise reasonable care to see that such means of approach remain in a safe condition or, where appropriate, to take such precautions or give such warnings as

would protect those using such area against unforeseen danger. Whether those means of ingress or egress are used primarily for that purpose would generally be a question of fact.

Contrary to the Transit Authority's urging, our decisions in *Bethel* and *Adams* do not lead us to a different result. In *Adams*, we held that the special rule of "absolute liability" imposed on a carrier for the tortious acts of its employees was no longer practicable. Similarly, in *Bethel*, we held that a common carrier is no longer subject to a higher standard of care in transporting its passengers, but rather is subject to the same duty as any other potential tortfeasor.

While *Adams* and *Bethel* brought important aspects of the law governing common carriers in line with general tort law, they did not eliminate all distinctions between common carriers and other alleged tortfeasors. We therefore conclude that the *Schlessinger* rule should be retained, at least as applied to areas that serve primarily for ingress and egress to a subway or other similar station that is served by a single carrier.* This long-settled rule is undoubtedly consistent with the expectations both of carriers and their patrons, expectations that may be relied on by property owners in allocating control over and responsibility for these areas, as well as by lawyers advising injured clients. A subway patron in the position of plaintiff here would surely be surprised to learn that the New York City Transit Authority had no duty to provide her with a stairway on which she could safely descend to the subway, and we see no good reason to hold that that duty is abolished.

In the case before us, the evidence at trial was sufficient to establish that the stairway in question was used primarily as a means of access to and from the subway. Therefore, defendants had a duty to maintain the stairway or to warn patrons of any dangerous condition. So imperative is the duty to provide a safe means of access to and from the subway that such duty may not be delegated to another. Thus, even if the responsibility to maintain the stairway resides in another entity, defendants may not avoid their responsibility to "at least provide against injury to its passengers by erecting such barricades, or giving such warning, as [would] guard against accidents" (*Schlessinger*, 49 Misc at 505).

---

* We note that this duty of care imposed on a carrier to keep approaches and platforms safe has not been extended to common areas in a multi-carrier facility (*see generally Raffile v Tower Air*, 264 AD2d 721 [2d Dept 1999]).

Accordingly, the judgment of Supreme Court appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.

GRAFFEO, J. (dissenting). Based on the jury verdict, there is no question that plaintiff's injuries arose from a hazardous condition on a stairway. The question here is whether the Transit Authority, as a common carrier, is responsible for plaintiff's damages even though it did not own, occupy or control the defective premises. This inquiry turns on whether this Court should adopt a rule, developed by the Appellate Term in 1906 in *Schlessinger v Manhattan Ry. Co.* (49 Misc 504 [App Term 1906]), that would hold the Transit Authority liable for injuries on property that is owned, maintained, and controlled by others, but is traversed by passengers on their way to and from subway stations. In my view, the *Schlessinger* rule of premises liability is outmoded and, consistent with our recent precedents, common carriers should be required only to maintain property they own, occupy or control.

This issue first came to our attention in 2003 when we decided *Bingham v New York City Tr. Auth.* (99 NY2d 355 [2003] [*Bingham I*]). In *Bingham I*, the injured plaintiff appealed the grant of summary judgment dismissing her complaint. As part of their motion papers, defendants submitted evidence indicating that they did not own, control or maintain the stairwell where plaintiff fell and asserting that the stairway was not used exclusively by subway patrons. Defendants had, however, failed to raise in the motion court the argument they pursued on appeal—that the *Schlessinger* rule should be abandoned. As a result, we did not reach that question. Instead, we reversed the order granting summary judgment and remitted on the ground that an issue of fact existed as to "the alleged common use of the stairway" by businesses or tenants in addition to subway patrons (*Bingham I*, 99 NY2d at 359), a reference to the First Department's version of the *Schlessinger* rule.

On remittal, the case proceeded to trial, with the Transit Authority raising the issue that it had not preserved in *Bingham I*. During the charge conference, defendants argued that, like other special common carrier rules that are no longer viable, the *Schlessinger* rule should be abandoned in favor of a rule that does not distinguish common carriers from other defendants, holding them liable only for defects on property they own, occupy or control. The Transit Authority also took issue with plaintiff's iteration of the *Schlessinger* rule, under

which the jury would be charged that the Transit Authority could be held liable if the stairway was used "openly and notoriously" by subway patrons. The trial court rejected the Transit Authority's arguments without explanation and charged the jury as requested by plaintiff. The jury found in plaintiff's favor and, after the Appellate Division declined to disturb the liability finding, the Transit Authority pursued its appeal to this Court.

We now must decide whether the *Schlessinger* rule remains viable in light of our recent common carrier cases and modern premises liability rules. Although no one disputes that the Transit Authority has a duty to maintain approaches and subway platforms—the areas it clearly controls (*see Lewis v Metropolitan Transp. Auth.*, 99 AD2d 246 [1st Dept 1984], *affd for reasons stated* 64 NY2d 670 [1984])—our Court has never adopted the *Schlessinger* rule. As is evident from the majority opinion, in New York the rule has had limited reach, having been applied primarily to subway or train operators in metropolitan areas; the majority does not cite any upstate appellate court decision relying on the rule. In my view, the *Schlessinger* rule should not now be embraced by this Court, even in the restricted context of this case.

By applying the *Schlessinger* rule, the majority backtracks from the progress of the law in discarding specialized rules of liability, especially where common carriers are concerned. In the past decade, we retired several of the heightened duty and standard of care rules that had historically applied to common carriers. In *Adams v New York City Tr. Auth.* (88 NY2d 116 [1996]), the Court dispensed with the 100-year-old rule that had imposed vicarious liability on common carriers for all acts of their employees, including acts outside the scope of employment, in favor of a more modern rule treating common carriers like other employers. Likewise, in *Bethel v New York City Tr. Auth.* (92 NY2d 348 [1998]), the Court departed from its long-standing precedent that a common carrier is held to a standard of "extraordinary care" for injuries sustained by passengers while in transit, establishing that the reasonable person standard of care applicable to all other tortfeasors also applied to common carriers. In reaching these conclusions, the Court noted that the historic reasons for treating common carriers differently from other tortfeasors no longer made sense given that public transportation, such as rail travel, had become as safe as private means of transport (*id.* at 353, citing *Adams*, 88 NY2d at 121). The trend away from specialized common carrier rules reflects

the broader trend in real property law, as exemplified by *Basso v Miller* (40 NY2d 233 [1976]), which dispensed with specialized standards of care that depended on the status of the injured party as a licensee, invitee or trespasser, instead adopting an across-the-board standard of reasonable care under the circumstances. The most recent precedent from other jurisdictions relied on by the majority was decided in 1955—long before our Court began the shift away from specialized common carrier and premises liability rules.

Similar to the specialized common carrier rules we abandoned in *Bethel* and *Adams*, the *Schlessinger* rule is inconsistent with the legal principles applicable to other defendants in negligence actions. Absent evidence that a party created a dangerous condition, liability for a premises defect is generally predicated on ownership, occupancy or control. This is reflected in the standard Pattern Jury Instructions charge, which states simply that "[t]he (owner, possessor) of (land, a building) has a duty to use reasonable care to keep the premises in a reasonably safe condition for the protection of all persons whose presence is reasonably foreseeable" (PJI 2:90 [2007]). There is a PJI common carrier charge, but it is far narrower than the rule the majority adopts today. It states that "[a] carrier owes a duty to its (passenger, prospective passenger) to provide a reasonably safe place to (get on, get off) its vehicle" (PJI 2:166 [2007]). The rule reflected in the PJI charge does not require the Transit Authority or any other common carrier to enter onto or maintain property it does not own, occupy or control. Moreover, in the context of this case, there is no tension between these two PJI charges because the Transit Authority generally controls the subway approaches and platforms where patrons enter and exit subway trains. The stairway where the plaintiff in this case fell led to an area adjacent to a subway platform—there is no claim that the Transit Authority neglected its duty to provide plaintiff with a safe place to get on or off a train.

Beyond its incompatibility with modern trends, the majority rule is troubling because it results in a party being held liable for a condition that it did not create and lacks the power to ameliorate. Where the Transit Authority does not own, occupy or control property, it is not well-positioned to ensure that the property is free of hazardous conditions. A common carrier has no greater right than any other neighbor to enter and repair a defective condition on property owned, occupied or controlled by another, or to erect the barriers or warning signs suggested by the majority.

The majority's rule will undoubtedly prove difficult to apply fairly. The duty to maintain property ordinarily arises from a party's legal relationship to that property, often created by deed, lease, easement or contract*—a relationship that can be established by objective proof at trial. Here, the duty to maintain embraced by the majority turns on an amorphous standard: whether the property was used "primarily" by subway patrons at the time of the accident. Under this standard, a duty can come into and out of existence depending on circumstances outside a common carrier's control, such as the number and type of businesses that may also attract persons who walk across the property in question. The majority's formulation even differs from that applied by the First Department, which has held the Transit Authority liable only if the area where the accident occurred is used exclusively by subway patrons (*see Ceron v City of New York*, 277 AD2d 7 [1st Dept 2000]; *O'Hara v New York City Tr. Auth.*, 248 AD2d 138 [1st Dept 1998]; *Pena v New York City Tr. Auth.*, 237 AD2d 150 [1st Dept 1997]; *Haberlin v New York City Tr. Auth.*, 228 AD2d 383 [1st Dept 1996]; *Fortson v New York City Tr. Auth.*, 111 AD2d 58, 58 [1st Dept 1985]). Putting aside the dilemma the Transit Authority now faces in predicting which neighboring properties it must inspect and maintain, this rule will create difficulties for juries and lead to inconsistent results, with one jury finding that the Transit Authority had a duty to maintain a particular property while another may reach the opposite conclusion with respect to the same location.

For all of these reasons, I respectfully dissent and would reverse the judgment and grant summary judgment to defendants dismissing the complaint.

Chief Judge KAYE and Judges CIPARICK and SMITH concur with Judge PIGOTT; Judge GRAFFEO dissents and votes to reverse in a separate opinion; Judges READ and JONES taking no part.

Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.

---

* Even obligations created by contract "will generally not give rise to tort liability in favor of a third party" (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]; *see also, Church v Callanan Indus.*, 99 NY2d 104, 111 [2002]).