Sabine v State of New York (2024 NY Slip Op 06288)

Sabine v State of New York

2024 NY Slip Op 06288

Decided on December 17, 2024

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 17, 2024

No. 118 

[*1]Michael Sabine, Appellant,
v
State of New York, Respondent.

Michael P. Kenny, for appellant.
Frederick A. Brodie, for respondent.
New York State Academy of Trial Lawyers, amicus curiae.

MEMORANDUM:
The order of the Appellate Division should be affirmed, with costs, and the certified question not answered as unnecessary.
The legal question certified to this Court, whether prejudgment interest in a personal injury case arising from a motor vehicle accident should accrue from the point at which a plaintiff's summary judgment motion on the issue of "liability" is granted or the point at which a finding is made that plaintiff sustained a serious injury, as that term is defined in Insurance Law § 5102 (d), cannot be reviewed because plaintiff failed to preserve the question in the trial court.[FN1]
"As we have many times repeated, this Court with rare exception does not review questions raised for the first time on appeal. Unlike the Appellate Division, we lack jurisdiction to review unpreserved issues in the interest of justice" (Bingham v New York City Tr. Auth., 99 NY2d 355, 359 [2003]). "To demonstrate that a question of law is preserved for this Court's review, a party must show that it raised the specific argument in [the trial court] and asked the court to [*2]conduct that analysis in the first instance" (Henry v New Jersey Tr. Corp., 39 NY3d 361, 367 [2023] [internal quotations omitted]). It is this Court's duty to determine whether an issue has been properly preserved below, regardless of whether the parties have raised preservation arguments (see Matter of McGovern v Mount. Pleasant Cent. Sch. Dist., 25 NY3d 1051, 1053 [2015]). Thus, although the State does not oppose the Court's resolution of this issue, we are obligated to consider whether plaintiff's arguments are properly preserved.
Among the many salutary reasons for our preservation rule is that "in making and shaping the common law . . . this Court best serves the litigants and the law by limiting its review to issues that have first been presented to and carefully considered by the trial and intermediate appellate courts" (Bingham, 99 NY2d at 359). In considering whether to disturb well-settled Appellate Division precedent, this Court should only act where it has the benefit of a full record, including a reasoned trial court decision [FN2].
As it relates to the proceedings below, claimant never raised the question of the accrual date of prejudgment interest in the trial court. Further, when a party objects to a provision contained in a judgment, they generally have the ability to seek relief pursuant to CPLR 5015 and 5019, as plaintiff was invited to do here. Had plaintiff made such a motion, arguments in favor of and against earlier accrual of prejudgment interest could have been made, thereby providing a fully developed record for appeal, an essential step for parties seeking review from the Court of Appeals. But, plaintiff did not preserve an objection to the imposition of prejudgment interest on the record before the trial court. As plaintiff had an opportunity to raise his objections in the trial court but failed to do so, the issue is unreviewable on appeal to this Court.
Finally, we disagree with the Appellate Division's application of the rarely used exception to the preservation rule derived from Telaro v Telaro (25 NY2d 433 [1969]), which applies only where the unpreserved argument could not have been avoided through "factual showings or legal countersteps" in the trial court (see Bingham, 99 NY2d at 359 ["Had defendants' new argument been presented below, plaintiff would have had the opportunity to make factual showing or legal argument that might have undermined defendants' position"]). That exception, which this Court has rarely applied in this manner (and not once in the past four decades), does not apply here. Nor has it ever been applied in the manner that our dissenting colleagues would like to use it—"when controlling precedent blocks the protesting party from obtaining relief" (dissenting op at 12). As the dissenting justices below acknowledged, we cannot "review the issue because it was not raised before the Court of Claims," and we must, as predicted, "decline to resolve the conflict based on this appeal" (214 AD3d at 1417).

RIVERA, J. (dissenting):

Claimant prevailed against the State under New York's No Fault regime—Article 51 of the Insurance Law—in his personal injury action arising from an automobile collision caused by a State employee. Through a bifurcated process, the Court of Claims granted partial summary judgment on liability to plaintiff, and, three years later determined that claimant sustained "serious injury," as defined by Insurance Law § 5102 (d), and awarded damages. Those determinations are not in dispute on this appeal. The only issue before us is whether, as claimant asserts, the Court of Claims miscalculated the prejudgment interest to which he is entitled under CPLR 5002, by measuring the interest from the date the court set the damages rather than from the determination of liability. The question of when prejudgment interest begins to accrue in bifurcated automobile accident actions has divided the Appellate Division for decades. I would resolve the matter by holding that prejudgment interest should be calculated from the date that liability is established and not from the date of a subsequent damages award upon a finding of serious injury. Any other rule would fail to fully compensate prevailing claimants who sustain serious injuries—a result contrary to CPLR 5002 and the legislative purpose of the No Fault Law framework, which retains judicial remedies for seriously injured claimants. Accordingly, I would reverse and remit so that interest may be calculated from the date the Court of Claims determined the State was liable.
I.
Claimant Michael Sabine sued the State of New York for injuries sustained when a State-owned truck driven by one of its employees collided with his vehicle. The Court of Claims granted claimant partial summary judgment on liability on September 26, 2018.[FN3] Following a bench trial, the Court found that claimant established serious injury within the meaning of Insurance Law 5102 (d) and awarded him $550,000 in damages on October 27, 2021 [FN4]. Judgment was then entered awarding damages along with prejudgment interest, calculated from the date of the October 27, 2021 decision.
Claimant appealed from this latter portion of the judgment, contending that the prejudgment interest should have run from the date the court held the State liable rather than the later finding of serious injury. The Appellate Division unanimously affirmed the judgment insofar as appealed from, but divided on preservation, with two Justices concluding the issue was unpreserved (214 AD3d 1414, 1416-1417 [4th Dept 2023]). Three Justices disagreed on that score, explaining that "assuming, arguendo, that claimant failed to preserve his contention" an exception to preservation applied because claimant raised "a purely legal issue that could not have been obviated or cured by factual showings or legal countersteps in the trial court [], related to the law in this Department with respect to the calculation of prejudgment interest in automobile accident cases" (id. at 1415 [internal quotation marks omitted]). On the merits, these Justices held that under its existing case law, the Court of Claims was bound to calculate the interest from the date of the serious injury determination (id. at 1415-1416, citing Ruzycki v Baker, 301 AD2d 48, 51 [4th Dept 2002]; Manzano v O'Neil, 298 AD2d 829, 830 [4th Dept 2002]; and Phelps v Phelps, 128 AD3d 1545, 1547 [4th Dept 2015]). The Appellate Division granted claimant leave to appeal.[FN5]
II.
Claimant argues that interest should run from the date that common-law liability attached. The State responds that serious injury is an element of liability under the No Fault Law, and that the serious-injury finding thus marks the point from when prejudgment interest is calculated.
The Second and Third Departments have expressly concluded that serious injury under the No Fault Law is a question of damages, not liability, for purposes of calculating prejudgment interest (see e.g., Van Nostrand v Froelich, 44 AD3d 54, 59, 61-62 [2nd Dept 2007]; Kelley v Balasco, 226 AD2d 880 [3rd Dept 1996]; Ives v Corell, 211 AD2d 899 [3rd Dept 1995])[FN6]. In contrast, the Fourth Department held in Ruzycki v Baker that "[a] defendant is not liable for noneconomic loss under Insurance Law § 5104 (a) unless the claimant proves that [they] sustained a serious injury, and thus the term 'liability' in motor vehicle accident cases encompasses both negligence and serious injury" (301 AD2d 48, 51 [4th Dept 2002]). The Fourth Department's outlier view is contrary to the No Fault Law framework and the concerns animating the legislative derogation of common-law negligence claims in cases where the claimant has not sustained a statutorily-defined serious injury.
The No Fault Law, codified at Article 51 of the Insurance Law—states, in pertinent part:
"(a) Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss" (Insurance Law 5104 [a]).
"Serious injury" is defined in section 5102 (d) as a personal injury that results in, among other things, death, dismemberment, disfigurement, permanent loss of use of a body organ or member, or a medically determined injury or impairment that prevents the person from substantially performing their daily activities.
The No Fault Law limits the remedies available in automobile accident actions but does not alter the legal duties underlying liability. The Legislature enacted the No Fault law to "remedy[ ] the defects perceived by the Legislature to inhere in the fault-based tort system for compensating automobile accident personal injury claimants" (Montgomery v Daniels, 38 NY2d 41, 55 [1975]). The law "provides a compromise: prompt payment for basic economic loss to injured persons regardless of fault, in exchange for a limitation on litigation to cases involving serious injury" (Pommells v Perez, 4 NY3d 566, 571 [2005]). The result—and an "obvious goal[ ]"—was "to keep minor personal injury cases out of court" (Licari v Elliott, 57 NY2d 230, 236 [1982]). By limiting judicial remedies available under the preexisting fault-based tort system to seriously injured automobile accident plaintiffs, the Legislature sought to "promot[e] prompt resolution of injury claims, limiting cost to consumers and alleviating unnecessary burdens on the courts (Pommells, 4 NY3d 566, 570-571 [2005], citing Governor's Mem. approving L 1973, ch 13, 1973 McKinney's Session Laws of NY, at 2335). Consistent with this goal, when a plaintiff fails as a matter of law to establish serious injury, the complaint is dismissed (see Licari, 57 NY2d. at 240). However, this gatekeeping determination in no way implies that the action was not one "arising out of negligence" (Insurance Law § 5104 [a]). Defendant may well be at fault for the plaintiff's lesser injury, but the No Fault Law provides exclusive compensation through insurance coverage for "basic noneconomic loss" regardless of fault (Insurance Law § 5102 [a], § 5103). Based on the statutory text and design, we easily glean that the legislature intended to abrogate the fault-tort system only for those plaintiffs that could not establish a statutorily defined "serious injury" (Insurance Law § 5102 [d]). These plaintiffs are compensated under the no-fault insurance scheme. However, plaintiffs seriously injured within the meaning of Insurance Law § 5102 (d) retain the judicial remedies available to all other tort plaintiffs.
Under CPLR 5002:
"Interest shall be recovered upon the total sum awarded, including interest to verdict, report or decision, in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment. The amount of interest shall be computed by the clerk of the court and included in the judgment" (CPLR 5002).
The statute "indemnif[ies] the plaintiffs for the nonpayment of what is due to them" (Trimboli v Scarpaci Funeral Home, 37 AD2d 386, 389 [2nd Dept 1971], 30 NY2d 687 [1972], affg on op below, 30 NY2d 687 [1972]). Prejudgment interest is not punitive in nature as it merely ensures that the plaintiff who "has been deprived of the use of money to which they are entitled from the moment that liability was determined" is compensated for that loss from the defendant, "who has actually had use of the money, has presumably used the money to its benefit and, consequently, has realized some profit, tangible or otherwise, from having it in hand during the pendency of the litigation" (Love v State of New York, 78 NY2d 540, 544-545 [1991]).
The Court has previously recognized that,
"[w]hile the application of this provision is straightforward in the usual case, it poses special difficulties in bifurcated trials, where the issues of liability and damages are tried seriatim. Inasmuch as there are actually two verdicts in such trials—the first concerning liability and the second concerning damages, the proper application of CPLR 5002's rule computing interest from 'the date the verdict was rendered' becomes somewhat problematic"
(id. at 542, citing Siegel, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, 1991 Supp Pamph, and CPLR 5002, at 529). This problem is all the more common in personal injury actions, where bifurcation is encouraged (22 NYCRR 202.42 [a] ["Judges are encouraged to order a bifurcated trial of the issues of liability and damages in any action for personal injury where it appears that bifurcation may assist in a clarification or simplification of issues and a fair and more expeditious resolution of the action"]). This Court has clarified that, given CPLR 5002's purpose of indemnifying plaintiffs, prejudgment interest is calculated from "when the plaintiff's right to be compensated for the damages [they] sustained becomes fixed in law" (Love, 78 NY2d at 544). Thus, when liability and damages are decided through a bifurcated process—a trial, partial summary judgment on liability alone, or a default judgment that does not resolve damages—"the plaintiff's right to be made whole becomes fixed when the [decision] holding the defendant liable is rendered" because "[a]t that point the defendant's obligation to pay the plaintiff is established, and the only remaining question is the precise amount that is due (id.). This ensures that "claimants are [ ] fully compensated for their losses in bifurcated [proceedings]" (id.).
In accordance with these legal principles and our precedent, an automobile accident claimant who establishes, through a bifurcated process, first that the defendant is liable for the underlying tort and thereafter establishes that they have sustained serious injury within the meaning of section 5102 (d), is entitled to prejudgment interest under CPLR 5002 from the date that liability is determined. In those cases, liability is "fixed" once a claimant establishes a defendant's culpability for the injury as a matter of fact and law. Indeed, a finding of serious injury is not an essential element of liability, but a finding of liability is a necessary prerequisite to a determination of damages (id. at 544-545). A finding of serious injury establishes what damages, if any, are due the claimant. That conclusion maintains the integrity of the No-Fault Law framework, which allows only seriously injured claimants to maintain an action for judicial relief. Without that showing, the "plaintiff has no claim to assert and there is nothing for the jury to decide" (Licari, 57 NY2d at 238). But once the showing is made, the claimant is entitled to full compensation, which under our law includes money held by the defendant in the course of a bifurcated proceeding during the pendency of the damages determination (CPLR 5002; Love, 78 NY2d at 544).
The State argues that liability is set under the No Fault Law when a claimant establishes that they sustained a serious injury because absent such showing they have no cognizable claim. That is true, but irrelevant to the analysis here because the court found that claimant in fact sustained a serious injury and thus his common-law tort claim is not abrogated by the legislative design [FN7]. Moreover, the legislative mandate that courts dismiss claims of those who have [*3]failed to establish serious injury does not mean that liability attaches only once serious injury is proven. Indeed, the structure and purposes of the No Fault Law confirms that claimants who in fact meet the statutory requirement are entitled to money otherwise due to them as of the date that liability is fixed (Love, 78 NY2d at 544). Even if this logic were not enough, the State's approach still fails because it would yield the absurd result that the class of claimants identified by the legislature as entitled to a judicial remedy—those seriously injured in automobile accidents, to be distinguished from the "mountains of other auto-accident claims" for lesser injuries (Pommells, 4 NY3d at 57)—would be denied the full compensation available to every other prevailing tort claimant. That is both contrary to our rule eschewing such an absurdity and contrary to the legislature's intent (see People v Garson, 6 NY3d 604, 614 [2006] [internal quotation marks omitted], citing People v Santi, 3 NY3d 234, 244 [2004] [courts must "interpret a statute so as to avoid an unreasonable or absurd application of the law"]).
III.
A.
There is no preservation bar to resolving this issue of statewide importance and the majority is mistaken to so hold. The Court of Claims issued a final judgment awarding defendant damages and prejudgment interest. Claimant timely appealed that judgment, challenging only what he alleges is a miscalculation of the prejudgment interest amount to which he is entitled under CPLR 5002. The Court of Claims prejudgment interest determination was based on binding Fourth Department precedent. As the three-Justices below stated, "[t]he court was bound to apply the law as promulgated by [the Appellate Division]" and, under that precedent, the Court of Claims "properly calculated the award of prejudgment interest from the date of the decision determining, inter alia, that claimant sustained a serious injury" (214 AD3d at 1415). Claimant's first opportunity to present his argument for modification of the judgment was on appeal to the Appellate Division, the court that established the binding precedent. Thus, the question is properly before us on appeal from the Appellate Division's decision to adhere to its long-standing precedent.
B.
According to the majority, however, we cannot consider the question presented because claimant failed to present it to the Court of Claims, a court bound by controlling precedent to deny him the relief he sought. I cannot see how such a futile exercise furthers the goals of our preservation doctrine. Preservation allows the nisi prius court to address a party's claim in the first instance. We rely on our preservation rules to prevent situations where a party may "sit idly by while error is committed, thereby allowing the error to pass into the record uncured, and yet claim the error on appeal" (People v Patterson, 39 NY2d 288, 295 [1976]). "Our preservation doctrine is not constitutionally compelled; it is of our own making, and we can draw it as narrowly as we wish" (Maldovan v County of Erie, 39 NY3d 166, 190 n 9 [Wilson, J., dissenting] [2022] [noting that our court-created preservation rules likely stemmed from a practical desire for docket control]).[FN8] Our preservation rules are, in part designed to prevent situations where "failure to raise a claim in the court of first instance means that the appellate record is inadequate to fairly assess the merits" (People v Cabrera, 45 NY3d 35, 41 [2023]). But there is no inadequate record here—the dates and numbers are set. There is no way to get around the simple point that preservation is not a bar when controlling precedent [*4]blocks the protesting party from obtaining relief and the request would therefore be a hollow formality (see Grady v Chenango Val. Cent. School Dist., 40 NY3d 89, 120 n 3 [2023] [Rivera, J., concurring]). Here, the Court of Claims entered a final judgment and claimant timely appealed therefrom and sought relief from the first court capable of providing it: the Appellate Division, Fourth Department.
C.
The majority erroneously asserts, without explanation, that claimant should have sought relief pursuant to CPLR 5015 and 5019 (majority op at 3). Neither of those provisions applies. A judgment may be vacated under CPLR 5015 on a motion by claimant on the following grounds:
"1. excusable default, if such motion is made within one year after service of a copy of the judgment or order with written notice of its entry upon the moving party, or, if the moving party has entered the judgment or order, within one year after such entry; or
2. newly-discovered evidence which, if introduced at the trial, would probably have produced a different result and which could not have been discovered in time to move for a new trial under section 4404; or
3. fraud, misrepresentation, or other misconduct of an adverse party; or
4. lack of jurisdiction to render the judgment or order; or
5. reversal, modification or vacatur of a prior judgment or order upon which it is based"
(id.). None of these grounds pertain to claimant's claim that the prejudgment interest should have been calculated from an earlier date. Similarly inapplicable is CPLR 5019 which allows an order to be corrected or amended to address (1) any "mistake, defect, or irregularity in the papers or procedures in the action not affecting a substantial right of a party"; (2) "a subsequent judgment or order affecting judgment or lien"; (3) a change in judgment creditor; or (4) a certificate of change of the docket by the county clerk (CPLR 5019). Claimant does not allege a mistake, defect or irregularity; he challenges the existing judgment not a subsequent judgment or order; and the argument does not involve a judgment creditor or the county clerk's docket change certificate. I know of no CPLR rule that required claimant to seek reconsideration in that court rather than timely appeal to the Appellate Division on a previously-settled legal question of prejudgment interest.
To the extent the majority asserts that the court invited claimant to move under either of those wholly inapplicable CPLR sections, the majority appears to equate correspondence from the judge's law clerk with a court directive to file a "formal motion". Of course, only a judge can rule on a motion. In any case, the majority fails to explain why, on one hand, the correspondence from the clerk should be treated as the court's invitation, but on the other hand, the rest of the correspondence rejecting claimant's request under binding precedent should be ignored. The correspondence sets forth the clerk's assertion that the court considered and rejected claimant's request for reconsideration of the prejudgment interest amount as the court was bound by departmental precedent. The clerk further stated that, if claimant had something to add in support of that request, he could file a motion or otherwise seek relief from the Appellate Division. Since claimant unsuccessfully raised the issue and then timely appealed from the judgment—apparently following the court's directive as communicated by the clerk—claimant preserved the question even under the majority's flawed view of preservation.
IV.
Even if preservation was required, as the Appellate Division correctly concluded, and contrary to the majority's view, an exception to our preservation rules applies. Parties may raise claims for the first time on appeal that "could not have been obviated or cured by factual showings or legal countersteps" in the court of original jurisdiction (Telaro v Telaro, 25 NY2d 433 [1969]; see also Richardson v Fiedler Roofing, Inc., 67 NY2d 246, 250 [*5][1986] ["The argument raises solely a question of statutory interpretation . . . which we may address even though it was not presented below"]; People v Rodriguez y Paz, 58 NY2d 327, 337 [1983] ["a question of law which could not have been obviated by an evidentiary showing at th(e) hearing . . . may be raised for the first time on appeal"]; American Sugar Ref. Co. of New York v Waterfront Commn. of New York Harbor, 55 NY2d 11, 25 [1982] [issue could not have been "obviated or cured by factual showings or legal countersteps, turning as it does on legislative intent"]; Rivera v Smith, 63 NY2d 501, 516 n 5 [1984]; NY Const, art VI, § 3 [a] ["The jurisdiction of the court of appeals shall be limited to the review of questions of law]). Here, because binding Fourth Department precedent required the Court of Claims to award prejudgment interest from the date of its serious injury determination all that remained was the ministerial act of a mathematical calculation. No argument by claimant could forestall that outcome and the State would have no reason to proffer "factual showings or legal countersteps" to overcome a patently unavailing claim. In short, there is simply no preservation bar to our reaching the merits of claimant's appeal and deciding a question that has long divided the Appellate Division.
For the reasons I have discussed, I would remit to the Court of Claims for entry of a judgment including prejudgment interest.
Order affirmed, with costs, and certified question not answered as unnecessary, in a memorandum. Judges Garcia, Singas, Cannataro and Halligan concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson concurs. Judge Troutman dissents and votes to reverse for reasons stated in all but part III subpart B of Judge Rivera's dissenting opinion.
Decided December 17, 2024

Footnotes

Footnote 1: We express no opinion on the merits of plaintiff's argument regarding the accrual date for prejudgment interest or the advisory views of the dissent on this issue. 

Footnote 2: Of course, as here, "in the face of adverse Appellate Division precedent, litigants are expected to preserve" their challenges even on criminal appeals (People v Cabrera, 41 NY3d 35, 46 [2023]).

Footnote 3: The court initially denied claimant's motion but granted a renewed motion after our decision in Rodriguez v City of New York (31 NY3d 312 [2018]).

Footnote 4: The trial was delayed and eventually held virtually due to the COVID-19 pandemic.

Footnote 5: It is unnecessary to answer the Appellate Division's certified question as to whether its order was properly made because the order affirming the final judgment insofar as appealed is itself a final order.

Footnote 6: The First Department held in Reid v Brown (308 AD2d 331 [1st Dept. 2003]) that a claimant must establish both fault and serious injury before proceeding to establish damages, explicitly overruling its prior holdings to the contrary. The court also appears to have distinguished between liability as a measure of "fault" and the separate issue of "serious injury" which the court views as a predicate to a determination on damages. Thus, it is not clear, as claimant contends, that the First Department agrees with the Second and Third departments.

Footnote 7: If claimant's injury were determined not to be serious, the fact that interest would be computed from the date of the initial partial summary judgment grant would not harm the State, because there would have been no award of damages beyond what the no-fault law allows. On the other hand, running the interest only after the injury was determined to have been serious would allow the State to retain the time value of money from the date it was certain that claimant was injured by the State's negligence.

Footnote 8: The majority fails to discuss the source of our preservation doctrine and applies an illogical and hawkish preservation bar, as if preservation is a hard and fast rule, without exception. The only constitutional limit on our jurisdiction is to "questions of law". Thus, the scope of our judge-made preservation rule is of our own doing—and here the majority's undoing (NY Const, art VI, § 3 [a]; see also People v Michael, 48 NY2d 1 [1979] ["[t]he requirement that a claim must be timely raised in order to create a question of law is grounded in large part in the need to preserve limited judicial resources and avoid untoward delay"]; Misicki v Caradonna, 12 NY3d 511, 525 [2009] [Smith, J., dissenting] [noting that this Court dispenses from our preservation requirement for mode of proceeding errors, illegal sentences, and when preservation is otherwise "unreasonable" and "(w)e could do none of these things if the preservation rule were truly jurisdictional; common sense and practical necessity would be irrelevant"]).