People v Scott (2025 NY Slip Op 01562)

People v Scott

2025 NY Slip Op 01562

Decided on March 18, 2025

Court of Appeals

Rivera

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 18, 2025

No. 18 

[*1]The People & c., Respondent,
v
Marquese Scott, Appellant.

Nicholas P. DiFonzo, for appellant. 
Michael J. Hillery, for respondent. 

RIVERA, J.

The issue on appeal is whether defendant Marquese Scott's guilty plea was knowing, voluntary, and intelligent. Supreme Court made an egregious error during the plea proceedings, repeatedly asserting that defendant faced up to 45 years' incarceration if found guilty after trial, when his maximum exposure was statutorily capped at 20 years. As we have long recognized, inaccurate information regarding a sentence is a significant factor in determining whether a plea was voluntary. Given defendant's young age, his inexperience facing serious charges with the risk of consecutive sentencing, and the vast disparity between the plea offer of 6 to 8 years and the court's erroneous assertion that he faced 25 years more than the law allowed, we hold that defendant's guilty plea was not the result of a free and informed choice. Accordingly, defendant's plea cannot stand.
I.
Defendant was charged with three counts of burglary in the second degree (CPL 140.25 [2]), based on allegations that he unlawfully entered three dwellings, all on different dates. Around one year later, defendant appeared in court with counsel to discuss a negotiated plea in satisfaction of all charges. The prosecution put on the record that defendant, who was 23 years old, faced up to 15 years on each count, with a possible maximum consecutive sentence of 45 years. However, pursuant to off-record conversations with the court, if defendant pleaded [*2]guilty to all three charges that day, he would be sentenced to 6 to 8 years. Further, the court would consider an even lower sentence if the defense presented sufficient mitigation evidence before sentencing.
With the plea offer on the record, the court addressed defendant directly and warned: "I'm looking at your file, I see there's three separate counts of the same burglary in the second degree which carries a range . . . from three and a half to 15. Now, if a jury convicts you of all three, the judge is supposed to tell you what the worst case scenario could be, which of course could be 15 plus 15 plus 15, that's where they get the 45." Following this admonition, defendant accepted the plea offer. The court immediately proceeded with the plea colloquy, during which it asked defendant if he understood that he was facing 15 years on each count. Defendant responded that he understood. After accepting the guilty plea, the court adjourned defendant's case for sentencing. During the subsequent pre-sentencing interview with the probation department, defendant stated that he pleaded guilty because "he had a court-appointed lawyer and if he lost at trial he could face significantly more time."
At sentencing, the court twice again told defendant that he faced 15 years on each count for a total of 45 years. Then, based on the court's conclusion that defendant denied his guilt during his pre-sentencing interview, it refused to honor the negotiated incarceration term and instead imposed an enhanced sentence of 5 years on each count, for a total of 15 years, followed by 5 years of post-release supervision.
The court's repeated statements to defendant that he faced up to 45 years were legally erroneous. Although defendant could be sentenced consecutively on all three charges if found guilty, and each charge by itself carried a maximum sentence of 15 years, Penal Law 70.30 (1) (e) (i) capped defendant's aggregate sentence at 20 years. Thus, the court misinformed defendant that his outside exposure was more than double what the law allowed, adding two and a half decades to the maximum time he faced if he were convicted of all three counts after trial, for an inaccurate aggregate sentence of close to half a century.
On appeal, and represented by different counsel, defendant asserted for the first time that his plea was not knowing, voluntary, and intelligent, due to the court's misstatement of his potential maximum sentence. The Appellate Division concluded that defendant's challenge to his plea was unpreserved, and it would not consider the claim in the interest of justice (224 AD3d 1238, 1240 [4th Dept 2024]). However, the Appellate Division reduced the enhanced sentence as harsh and severe to an aggregate term of imprisonment of 10 ½ years (id.). A Judge of this Court granted defendant leave to appeal (41 NY3d 1020 [2024]).
II.
Defendant reiterates his claim that his plea was not voluntary because the court erroneously advised him that his aggregate sentencing exposure was 45 years rather than 20 years. As a threshold matter, contrary to the prosecution's contention, we may consider this issue on direct appeal. Ordinarily, a defendant must preserve a challenge to the voluntariness of their plea by moving either to withdraw the plea under CPL 220.60 (3) or to vacate the judgment of conviction under CPL 440.10 (see People v Lopez, 71 NY2d 662, 665-666 [1988]), thus allowing the court that accepted the plea "the opportunity to address the perceived error and to take corrective measures" in the first instance (People v Louree, 8 NY3d 541, 545 [2007]). However, we have recognized an exception to this preservation rule "where a defendant has no practical ability to object to an error . . . which is clear from the face of the record" (People v Peque, 22 NY3d 168, 182 [2013]). As we have explained, "where the deficiency in the plea allocution is so clear from the record that the court's attention should have been instantly drawn to the problem, the defendant does not have to preserve a claim that the plea was involuntary because 'the salutary purpose of the preservation rule is arguably not jeopardized' " (id., quoting Lopez, 71 NY2d at 665-666).
We have applied this exception to challenges based on a court's erroneous statements regarding a defendant's sentence. In Louree, the defendant did not have to preserve his claim that his plea was involuntary due to the court's failure to inform him until it imposed sentence that he would have to serve a term of post-release supervision (8 NY3d at 544). That error was plain on the face of the record and nothing in the court's statements suggested that its original description of the sentence was incorrect. And in People v Diaz, one of the companion cases in Peque, the defendant did not have to preserve his claim that the court's failure to warn him that a conviction would make him eligible for deportation rendered his plea involuntary (22 NY3d at 183). Critically, the court in Diaz not only failed to advise the defendant about potential deportation but, like the court in the appeal before us, also "provided defendant with inaccurate advice" (id. ["(T)he court implied that defendant's plea would entail adverse immigration consequences only for someone who was in the country illegally or had existing immigration issues—circumstances which did not apply to defendant"]). Given that the length of the sentence is typically a defendant's paramount [*3]concern when deciding whether to accept a guilty plea, our holding in Diaz applies to cases involving a court providing erroneous advice regarding a defendant's sentencing exposure. Where, as here, the court provides the defendant with erroneous information concerning their maximum sentencing exposure that is contrary to the undisputed text of the Penal Law, fails to correct its error on the record, and the defendant has no apparent reason to question the accuracy of that information, the defendant need not preserve a challenge to the voluntariness of the guilty plea on that ground.
Here, the record makes clear that the court, the prosecutor, and defense counsel all mistakenly believed that defendant faced an aggregate prison term of 45 years if convicted on all three counts.[FN1] Nothing on the record suggested that defendant's exposure was less than that which the court repeatedly stated authoritatively, and defendant therefore could not be expected to question that misinformation. As in Diaz, "defendant's claim falls within" Lopez's and Louree's "exception to the preservation doctrine" (22 NY3d at 183).
The prosecution's reliance on People v Williams in arguing for a contrary conclusion is misplaced, as the case is easily distinguishable. Williams held that the defendant had to preserve his claim that his plea was involuntary due to the court's misstatements about his minimum sentence, which were based on the mistaken belief that he did not have a predicate felony conviction that would enhance that sentence (27 NY3d 212 [2016]). The preservation exception did not apply because, as we observed, the court expressed uncertainty during the defendant's plea colloquy about the legality of his promised sentencing options (see id. at 223). These statements would have clearly prompted the defense to investigate and discover the court's error. Here, in stark contrast, the court's repeated assertions that defendant faced up to 45 years conveyed absolute complete assurance that it could legally impose that aggregate term.[FN2] Moreover, the record in Williams was replete with other opportunities for the defense to "seek clarification" of the defendant's predicate status (id.). The court had warned the defendant during the plea colloquy "about the determinative nature of [the] defendant's predicate felony offender status," there were "numerous adjournments" between the plea and sentencing, and the court made specific comments at sentencing that "offered an opening for counsel to confirm the legality of the court's sentencing options" (id.). The record here shows no such opportunities for defendant to discover the error and raise it with the court.[FN3]
The dissent adopts the prosecution's argument that because defendant did not move to withdraw his plea before sentencing, his sole recourse is a CPL 440.10 motion to vacate the conviction based on ineffective assistance of counsel. This ignores that defendant's challenge is based not on counsel's failures, but instead on the court's failures. Our precedent, and that of the United States Supreme Court, establish that the court has an "independent obligation," grounded in due process, "to ascertain whether the defendant is pleading guilty voluntarily" (Peque, 22 NY3d at 193; see also People v Ford, 86 NY2d 397, 402-403 [1995]; Boykin v Alabama, 395 US 238, 243-244 [1969]). That obligation includes an affirmative duty to ensure that the record is "clear that the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant" (Louree, 8 NY3d at 544; see Boykin, 395 US at 244). The dissent disregards these well-established due process requirements, which are fundamental to our criminal legal system, through its insistence that defendant may only file a motion based on an entirely different legal argument. That counsel may also have failed to discover the error following the court's [*4]unwavering statements of a 45-year aggregate term does not absolve the court of its constitutional obligation to ensure that defendant's guilty plea is knowing, intelligent, and voluntary.[FN4]
Indeed, in any case where the court makes an erroneous statement regarding a sentence, forgets to explain a direct consequence of a guilty plea, or otherwise does not ensure that a guilty plea is voluntary, defense counsel may always step in to correct the error.[FN5] We have never held that defense counsel's failure to do so, even if it provides a basis for a CPL 440.10 motion, precludes a defendant from separately challenging on direct appeal the voluntariness of their plea due to the court's dereliction of its own constitutional duty. Regardless of the merits of any CPL 440.10 motion, defendant has raised a challenge to the voluntariness of his guilty plea, and we apply our rules regarding preservation of such challenges to conclude that we may reach its merits. The dissent, by arguing that defendant may only challenge the court's error indirectly through a claim that defense counsel was ineffective, seeks to depart from our precedent and extinguish the exceptions we have wisely recognized as necessary to ensure that a court fulfills its crucial constitutional duty.[FN6]
Thus, contrary to the dissent's contention, we are not creating a new standard (see dissenting op at 6), but rather applying the facts to our existing doctrine.[FN7]
The dissenters' litany of questions about the scope of the preservation exception (see id. at 6-7) may reflect their dissatisfaction with that exception, but they do not cast any reasonable doubt on our strict adherence to precedent in this appeal. Nor does our holding risk, as the dissent fears, opening the floodgates to appellate courts with unpreserved claims (see id. at 9). As an initial matter, the appeal before us is assuredly rare. We presume that courts are aware of the law and have a baseline understanding of the sentencing statutes they are charged with implementing daily. Unlike fact-specific aspects of sentencing related to predicate status, or open legal questions about ambiguous statutory language, Penal Law § 70.30 (1) (e) (i) contains no gray area. Defendant's sentence was mandatorily capped at 20 years, and there was no justification for the court to read this decades-old statute otherwise.[FN8] We further reject the dissent's assertion that our application of precedent to this appeal may incentivize a judge to "simply avoid stating the defendant's maximum exposure before taking their plea" (dissenting op at 11). Where, as here, a defendant's maximum exposure is clear, a judge has no reason to keep that information secret. Even if there were some questions about a defendant's maximum exposure, a judge may simply acknowledge that uncertainty by, as one example, warning that it is unclear if the defendant is eligible for consecutive sentencing but explaining the defendant's possible sentencing exposure in either circumstance. Like in Williams, a judge's expression of uncertainty would cue a defense attorney to investigate further and discover any errors. The dissent provides no reason to believe that judges are incapable of identifying and explaining these uncertainties as part of their independent constitutional duty to ensure that any plea is knowing, voluntary, and intelligent.
More fundamentally, holding, as the dissent advocates, that claims such as defendant's fall outside the preservation exception would only increase litigation in appellate courts, not reduce it. Under that rule, defendant may still raise an unpreserved challenge to the Appellate Division and invoke the court's interest of justice jurisdiction (see CPL 470.15 [3] [c], [6]). Although the Appellate Division declined to exercise that authority in this appeal (see 224 AD3d at 1238), it routinely relies on it to address and remedy unpreserved claims of error, including challenges to the voluntariness of a guilty plea (see e.g., People v Lumpkin, 201 AD3d 1257, 1257 [3d Dept 2022] ["Although [*5]defendant's contention" that his guilty plea was involuntary "is not preserved for our review due to the lack of an appropriate postallocution motion, we nevertheless exercise our interest of justice jurisdiction to take corrective action"] [internal citations omitted]; People v Drayton, 189 AD3d 1892, 1893 [3d Dept 2020] ["(I)n view of the plea colloquy, sentencing minutes and defendant's request, we deem it appropriate to exercise our interest of justice jurisdiction and vacate defendant's guilty plea"] [internal citations omitted]). Thus, narrowing the scope of the preservation exception would not prevent a defendant from raising an unpreserved challenge to the voluntariness of their guilty plea on direct appeal. As in this appeal, the Appellate Division would still review the record to determine if exercising its interest of justice jurisdiction is appropriate. Additionally, that defendant would have to file both a direct appeal and a CPL 440.10 motion, creating two separate litigation tracks raising issues that easily could have been addressed in one, and if the trial court denied the CPL 440.10 motion, two separate appellate processes. This is a waste of judicial resources. It would also increase the number of pro se submissions, which impose special burdens on courts and defendants, because defendants do not have an automatic right to counsel to assist with CPL 440.10 motions (see County Law § 722 [5] [granting courts discretion to appoint counsel to assist a defendant with a CPL 440.10 motion if they also have a pending direct appeal]).[FN9]
Finally, the dissent's accusation that our holding "disincentivizes defendants from correcting the trial court's misstatement of their maximum possible sentence" and lead to gamesmanship is entirely unfounded (see dissenting op at 11). Setting aside that the dissent offers no empirical evidence to support its cynical view that defendants and their attorneys conspire to leave errors uncorrected to tee up appellate issues, its claim is implausible as a general proposition. It strains credulity to believe that a defendant would risk their liberty and plead guilty solely on the outside chance that an appellate court would vacate their conviction and order a new trial some years in the future. Even if that defendant were successful on appeal, they will already have been incarcerated for years, and there is no guarantee against the prosecution offering a worse plea deal or the case proceeding to trial, where the defendant would risk being sentenced up to their maximum exposure if found guilty. The dissent's point that " '[a]s time passes, evidence is misplaced, witnesses disappear and once vivid memories of a crime begin to fade into uncertainty' " (id., quoting People v Jackson, 78 NY2d 638, 646 [1991]) may just as easily prejudice a defendant as the prosecution. An alibi witness may pass away, or an exculpatory video may be deleted. These risks make any "gamesmanship" a costly endeavor too extreme to believe that defendants are willing to accept them.[FN10] Accordingly, the dissent's baseless claim is no reason to depart from our settled precedent.
For these reasons, direct review is appropriate to assess the impact of the court's erroneous statements on the voluntariness of defendant's plea.
III.
Turning to the merits of defendant's challenge, "in order to be valid and enforceable, a guilty plea must be entered voluntarily, knowingly, and intelligently" (People v Brown, 14 NY3d 113, 116 [2010]). "A guilty plea is voluntary only if it represents an informed choice freely made by [a] defendant among other valid alternatives" (id., citing North Carolina v Alford, 400 US 25, 31 [1970]). Whether a plea is knowing, voluntary, and intelligent depends on the totality of the circumstances (see id. at 117-118). We must consider, among any other relevant factor, "the nature and terms of the agreement, the reasonableness of the bargain, and the age and experience of the accused" [*6](People v Hidalgo, 91 NY2d 733, 736 [1998]). A defendant receiving inaccurate information about their sentencing exposure is "another factor which must be considered by the court" (People v Garcia, 92 NY2d 869, 870 [1998]).
Based on the totality of the circumstances, defendant's plea was not voluntary, knowing, and intelligent. Defendant was only 23 years old at the time of his plea, and his prior experience with the criminal legal system did not involve any offenses that would prepare him to contemplate felony terms of incarceration, let alone consecutive sentencing of multiple offenses. As the prosecution stated on the record that the plea offer was valid so long as defendant pleaded guilty that same day, defendant was under immense pressure to give the court an immediate answer. And the court egregiously misinformed defendant that his sentencing exposure was 45 years if convicted on all three felony counts—"15, plus 15, plus 15"—when by statute his aggregate sentence was capped at 20 years. This 25-year differential between the court's erroneous calculation and the time permissible under the law was a significant factor inducing defendant to plead guilty and take the 6 to 8 year offer. Indeed, defendant reported to probation that he pleaded guilty to avoid facing considerably more time if convicted at trial. That statement is unsurprising, as a defendant "might never plead guilty absent the possibility or certainty that the plea will result in a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty" (Brady v United States, 397 US 742, 751 [1970]).
Although no one factor is dispositive, and we consider the totality of the circumstances to reach our holding, we cannot minimize the extreme nature of the court's egregious error and its impact on defendant's judgment. The court presented defendant two options: (1) accept the plea with the possibility of release in his late twenties, and the promise of a long life at liberty; or (2) go to trial and if found guilty spend close to half a century in prison, and walk out in his sixties, with more time left behind than ahead of him. That is no choice at all, for no matter how strongly one believed in their defense, it is difficult to imagine anyone in defendant's position willing to take such a risk. With the apparent stakes so high, defendant's plea was not voluntary, knowing, and intelligent as a matter of law.
Accordingly, the Appellate Division order should be reversed and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

SINGAS, J. (dissenting):

Our well-reasoned precedent demands that we reject defendant's belated challenge to the voluntariness of his plea on preservation grounds. The majority instead contorts the facts and our precedent beyond recognition, reaching the merits of defendant's claim under a capacious new preservation exception lacking a cogent standard or viable limiting principle. In doing so, the majority ignores that we have already expressly rejected the flawed premise on which this novel exception now rests. I dissent.
I.
Defendant pleaded guilty to three counts of burglary in the second degree stemming from separate burglaries of different dwellings. Each count bore a maximum prison sentence of 15 years, seemingly yielding at first glance a 45-year aggregate maximum sentence. Under Penal Law § 70.30 (1) (e) (i), however, defendant's aggregate [*7]maximum sentence was capped at 20 years if convicted on all counts. His minimum sentence on each count was 3½ years. As part of his plea bargain, defendant received a conditional sentence promise of between six and eight years' imprisonment, with the possibility of receiving 3½ years—the minimum incarcerative sentence—if he satisfied certain conditions between his plea and sentencing.
At the start of the plea hearing, the People inaccurately stated that defendant faced "a maximum sentence of 45 years['] incarceration." Defendant's attorney, who was present and participated throughout the proceeding, did not correct on the record this significant overstatement of defendant's sentencing exposure. The court then addressed defendant directly and said, "the judge is supposed to tell you what the wors[t] case scenario could be, which of course could be 15 plus 15 plus 15, that's where they get the 45." Defense counsel did not take this second opportunity to point out on the record that defendant's maximum prison sentence was 20 years, not 45. At the ensuing plea allocution, the court asked defendant if he understood that he "could on each count receive a maximum prison sentence [of] up to 15 years determinate sentence," and defendant replied in the affirmative. Once again, defense counsel did not take this opportunity to note that defendant's aggregate prison term could not exceed 20 years.
Defendant's sentencing took place around 5½ months later. At no point in between did defense counsel act to correct the court's repeated misstatements of the maximum possible sentence. Nor did defendant move to withdraw his plea or vacate his conviction.
At the sentencing hearing, before imposing sentence, the court engaged in an extended discussion with defendant and his attorney regarding whether defendant violated a condition of his plea. During that discussion, the court told defendant, "I thought I gave you, I told you that on each of these [counts] you could get up to 15 years. My math isn't that great but that totals 45." Shortly thereafter, the court said, "I have great latitude, I can go up to a maximum 15 years on each [count]"—but the court added that it was "[n]ot saying I'll do that." These comments marked defense counsel's fourth and fifth discrete opportunities, respectively, over nearly half a year, to correct an on-the-record misstatement of defendant's sentencing exposure. Defense counsel did not do so.
The court determined that it was not bound by the sentence promise because defendant violated a condition of his plea. The court then sentenced defendant to an aggregate term of 15 years' imprisonment. Immediately after the sentence was pronounced, defense counsel asked to reopen the sentencing hearing so that defendant could call a witness. The court denied the request. At no point during this exchange did counsel point out any of the court's repeated errors in stating the maximum amount of time that defendant could potentially spend in prison if convicted at trial.
On appeal, defendant claimed for the first time that the court's overstatements of his sentencing exposure rendered his plea involuntary. The Appellate Division rejected that belated contention because defendant failed to preserve it (224 AD3d 1238, 1239 [4th Dept 2024]).[FN11] The Court then declined to reach the unpreserved claim in the [*8]interest of justice (see id.). But the Court deemed defendant's sentence unduly harsh and severe and reduced his prison term from 15 years to 10½ (see id. at 1240).
II.
A.
With only narrow exceptions, we have unequivocally required a defendant to preserve a challenge to the voluntariness of their plea by making "a motion to withdraw the plea under CPL 220.60 (3) or a motion to vacate the judgment of conviction under CPL 440.10" (People v Lopez, 71 NY2d 662, 665 [1988]).[FN12] One exception applies "where the defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea" (id. at 666). This is because "the court's attention should have been instantly drawn to the problem, and the salutary purpose of the preservation rule is arguably not jeopardized" (id.). Defendant's factual recitation at his plea allocution is not at issue here, and there is no dispute that this exception does not apply.
The other exception applies only where the record reveals that preservation was "actual[ly] or practical[ly] unavailab[le]" to the defendant (People v Williams, 27 NY3d 212, 221 [2016]; see People v Louree, 8 NY3d 541, 546 [2007]). This occurs, for example, where the court first informs the defendant of a component of their sentence "during the course of sentencing" (Louree, 8 NY3d at 546).[FN13] As we have explained, requiring preservation in such circumstances would be a catch-22. A defendant can move to withdraw their plea only before their sentence is imposed, and they cannot thereafter move to vacate their conviction based on an error that is clear from the face of the record (see id.). As such, a defendant may be unable to preserve an objection to a component of their sentence that they first learned of during or immediately before the sentence's imposition (see id.). We therefore do not require preservation in that narrow instance (see id.).
But a defendant must preserve their claim if they have a legitimate opportunity to do so. Indeed, in applying this exception, we have repeatedly stressed its "significant constraints": it obtains only "where a defendant has no practical ability to object to an error in a plea allocution which is clear from the face of the record" (People v Peque, 22 NY3d 168, 182 [2013 plurality] [emphasis added]; see e.g. People v Crowder, 24 NY3d 1134, 1136-1137 [2015] [preservation required where "(n)either defendant nor defense counsel expressed any objection" despite having "had three opportunities" to preserve a plea-voluntariness challenge prior to sentencing]; People v Conceicao, 26 NY3d 375, 381 [2015] ["If a defendant has an opportunity to seek relief from the sentencing court, he must preserve his challenge to the plea"]; see also People v Delorbe, 35 NY3d 112, 119-120 [2020] ["we have reinforced th(is) carefully circumscribed limit( ) on exceptions to the preservation requirement in the plea context"]).
B.
The majority now abandons this long-settled limitation without meaningful explanation. Its new standard, fashioned from whole cloth, is untenably broad and unworkably unclear. The majority states that where "the court provides the defendant with erroneous information concerning their maximum sentencing exposure that is contrary to the undisputed text of the Penal Law, fails to correct its error on the record, and the defendant has no apparent reason to question the accuracy of that information, the defendant need not preserve a challenge to the voluntariness of the[ir] guilty plea on that ground" (majority op at 5-6). Does this include any erroneous statement by the court concerning the defendant's maximum possible sentence, no matter how small? If the court corrects its misstatement off the record, or defense counsel tells their client off the record what their maximum sentencing exposure actually is, can the defendant now reverse their plea on appeal as though those events never happened?
Furthermore, when exactly would a defendant have "apparent reason to question the accuracy" of the court's "information" (id. at 5)? Even assuming that the defendant themselves may have such a reason, must they now stand up during their proceedings and "question" the court's remark—despite the presence of their attorney—in order to preserve their claim for appellate review? Or does the majority mean for the exception not to apply where defense counsel had such an "apparent reason"? If the latter, how does that square with the majority's insistence that the exception turns on whether the defendant themselves, not their attorney, had the requisite actual or practical opportunity to preserve their claim (see majority op at 5-6, 8-9 & n 5)?
Insofar as the majority's standard turns on whether the defendant themselves had "apparent reason to question" whether the trial court was committing error (id. at 5), this marks a significant departure from our precedent that the majority fails adequately to explain. We have squarely and expressly required preservation when defense counsel had an opportunity to preserve their client's claim (compare id. at 5-6, 8-9 & n 5, with e.g. Williams, 27 NY3d at 223 [holding that "(b)y failing to seize upon these opportunities to object or seek additional pertinent information, defense counsel failed to preserve defendant's claim for appellate review" (collecting cases) (emphasis added)]; Crowder, 24 NY3d at 1136-1137 ["Neither defendant nor defense counsel expressed any objection" despite having "had three opportunities" to do so (emphasis added)]). The majority explicitly recognizes that we have done so; the majority even acknowledges "that defense counsel is tasked with preserving claims of error, even if that error involves the voluntariness of a defendant's actions" (majority op at 10 n 7 [emphasis added]; see also id. at 11 [reasoning that "a judge's expression of uncertainty" regarding a defendant's sentencing exposure "would cue a defense attorney to investigate further and discover any errors" (emphasis added)]). This makes eminent sense. Our criminal justice system guarantees all defendants the right to meaningful legal representation precisely because they are not fairly expected to know the technicalities of the law. Yet the majority's preservation exception elides this dispositive distinction out of existence.
And what does the majority mean by referencing the Penal Law's "undisputed text" (id. at 5)? In that regard, the majority appears to retain our preservation requirement where the error below relates to an "open legal question[ ] about ambiguous statutory language" (see majority op at 5-6, 10). Yet the majority fails to define that cryptic label. Sentencing statutes can indeed be ambiguous, and defendants do dispute their meaning. The majority gives no reason why our preservation requirement should rest on an appellate court's determination of whether a statute is "ambiguous" (id. at 10) or "[ ]disputed" (id. at 5). The majority fails to identify any prior case in which the requirement has been applied in such a way.
Nor does the majority acknowledge the qualitative difference between the trial court's misstatements here and the select list of errors that trigger the preservation exception under our precedent. We have excused preservation in this context only in certain limited instances where the trial court failed to inform the defendant of a component of their sentence or a consequence of their plea (see generally Louree, 8 NY3d 541 [postrelease supervision]; Conceicao, 26 NY3d 375 [waiver of right to jury trial, right to confront one's accusers, and privilege against self-incrimination]; Peque, 22 NY3d 168 [deportation]; cf. id. at 196 [plurality op] ["the Court's decision in the instant appeals arises from the truly unique nature of deportation as a consequence of a guilty plea; there is nothing else quite like it"]). The error here implicates neither. In stark contrast, the trial court misstated defendant's theoretical maximum sentence if convicted at trial. Unlike in every other case where the exception has been applied, that error did not render defendant ignorant of, and thus unable to object to, a consequence of pleading guilty or a component of the punishment imposed by the court. A defendant's misapprehension of their sentencing exposure is not even always reversible error: a plea may be voluntary despite that the defendant "was misinformed about the maximum sentence to which he was exposed" (People v Garcia, 92 NY2d 869, 870 [1998]). We have never before applied the exception where the defendant claims that the trial court committed an error of this type.
Taking the majority's rule at face value, I fear its holding will deluge the appellate courts. The majority waves away this concern by insisting that misstatements of a defendant's maximum possible sentence are "assuredly rare," because "[w]e presume that courts are aware of the law" (majority op at 10). I do not presume otherwise. Nonetheless, as criminal practitioners well know, despite the very best efforts of counsel and our trial-court colleagues, misstatements of a defendant's sentencing exposure are not uncommon. This is often understandable, because while the court's miscalculation here was relatively straightforward, the same cannot often be said in a more [*9]complex case, such as one involving dozens of counts, each of which may run consecutively or concurrently to the others, potentially depending on the proof at trial, or one involving sentencing predicates and enhancements, which may turn on information unavailable when plea discussions occur. Against this backdrop, the majority cannot reconcile its new standard with the delimited exception that we have time and again taken pains to describe as "narrow" and "rare" (see e.g. Louree, 8 NY3d at 545, quoting Lopez, 71 NY2d at 666 [stressing that the exception applies only in "the 'rare case' "]; Peque, 22 NY3d at 183 [plurality] [recognizing our "narrow exception to the preservation doctrine"]; Williams, 27 NY3d at 214 [recognizing "the existence of a narrow exception to the preservation requirement in rare cases where the defendant lacks a reasonable opportunity to object to (certain) fundamental defect(s) in the plea"]).
The majority thus fails to grapple with or justify the strain on judicial resources that its broad holding will predictably entail. Instead, the majority paradoxically insists that requiring preservation here "would only increase litigation in appellate courts, not reduce it" (majority op at 12). That head-scratching view of the preservation doctrine inexplicably ignores the doctrine's animating purpose—to "preserve[ ] limited judicial resources" by "allow[ing] the trial court an opportunity to correct any error in the proceedings below at a time when the issue can be dealt with most effectively" (Delorbe, 35 NY3d at 119 [internal quotation marks omitted]); accord People v Michael, 48 NY2d 1, 6 [1979]; see also People v Jackson, 29 NY3d 18, 22 [2017, Rivera, J.] ["The salutary goal of th[e] well-established preservation requirement is to avoid the need for an appeal"; it is "grounded in large part in the need to preserve limited judicial resources and avoid untoward delay in the resolution of criminal proceedings" (internal quotation marks omitted)]).
Moreover, pleas benefit both parties and generally mark an end to the litigation, including to the People's efforts to construct a case against the defendant (see e.g. People v Seaberg, 74 NY2d 1, 7 [1989] [plea bargaining "provides a means where, by mutual concessions, the parties may obtain a prompt resolution of criminal proceedings with all the benefits that enure from final disposition"]; People v Konieczny, 2 NY3d 569, 572 [2004] ["A plea of guilty, as we have repeatedly observed, generally marks the end of a criminal case, not a gateway to further litigation."]). To reopen defendant's prosecution years after it began, due to an error that defendant could have timely brought to the trial court's attention, undermines these weighty interests, including "the very real interest of the State in achieving finality in a criminal prosecution" (Delorbe, 35 NY3d at 119).
"As time passes, evidence is misplaced, witnesses disappear and once vivid memories of a crime begin to fade into uncertainty" (People v Jackson, 78 NY2d 638, 646 [1991]). The majority's holding therefore disincentivizes defendants from correcting the trial court's misstatement of their maximum possible sentence prior to accepting their plea, or from moving to withdraw their plea on this basis. After all, if such a defendant pleads guilty and does not then receive their promised sentence—as happened here—they may now freely seek to unwind their plea on appeal, thereby avoiding the consequences of violating their plea agreement. The majority thus "encourage[s] gamesmanship and waste[s] judicial resources in order to protect a defendant against a claimed error[,] protection against which requires no more than a specific objection on [their] part" (People v Dekle, 56 NY2d 835, 837 [1982]). For this reason, I fear that trial judges may now simply avoid stating the defendant's maximum sentencing exposure before taking their plea, for fear that any inadvertent error—however slight, and even if not pointed out by any party—may result in the defendant's plea being unwound. This undesirable outcome is fundamentally at odds with the majority's focus on the trial courts' vital duty "to ascertain whether the defendant is pleading guilty voluntarily" (majority op at 7).[FN14]
In this regard, the record makes plain that the court never indicated that it might impose the maximum sentence in this case. On the contrary, after mistakenly stating at sentencing that it could in theory "go up to a maximum [of] 15 years on each [count]," the court immediately added that it was "[n]ot saying I'll do that." The court instead acceded to the People's request that defendant be sentenced to the minimum sentence if certain conditions were satisfied prior to sentencing. The majority's insistence that the court somehow gave defendant a choice between pleading guilty or "go[ing] to trial and if found guilty spend[ing] close to half a century in prison" (majority op at 16) rests upon a grave misunderstanding of the record.
The majority commits yet another error by writing off the principal remedy that remains at defendant's disposal: a motion to vacate his conviction on grounds of ineffective assistance of counsel (see CPL 440.10). "Where a defendant's complaint about counsel is predicated on factors such as counsel's strategy, advice or preparation that do not appear on the face of the record, the defendant must raise [their] claim" by making such a motion (Peque, 22 NY3d at 202 [plurality]). If defendant had done so here, the parties could then have developed additional facts bearing directly on the voluntariness of the plea—including any facts revealing whether defense counsel told defendant off the record that his maximum prison sentence was 20 years (see e.g. People v Maracle, 19 NY3d 925, 929 [2012] ["To the extent that defendant seeks to . . . challenge the voluntariness of her plea (based) on matters outside the record, she may do so by affidavit in support of a CPL 440.10 motion" (internal quotation marks omitted)]). Such a motion is defendant's proper recourse. No legal authority supports the majority's suggestion that we should excuse preservation on the ground that if defendant were to file such a motion, its success would not be guaranteed (see majority op at 9-10 n 6).
On this point, the majority asserts that excusing preservation "is appropriate" because "defendant's challenge is based not on counsel's failures, but instead on the court's failures" to meet "its constitutional obligation" to ensure that defendant's plea was voluntary (id. at 7-8, 14). In other words, the majority reasons that preservation should be excused because defendant claims that the trial court committed constitutional error. This is legally baseless. With only "tightly circumscribed" exceptions, a defendant must "preserve[ ] in the trial court" "most errors of constitutional dimension" (see People v Hanley, 20 NY3d 601, 604-605 [2013] [internal quotation marks omitted] [collecting cases]).[FN15] That defendant's claim concerns "well-established due process requirements" (majority op at 8) thus says nothing about whether the claim must be preserved. Instead, as the majority acknowledges, we have long held that "[o]rdinarily, a defendant must preserve a challenge to the voluntariness of their plea" (id. at 4, citing Lopez, 71 NY2d at 665-666). This case should be no different.
III.
Finally, and equally troubling, contrary to the majority's contention, our holding in People v Williams (27 NY3d 212 [2016]) directly forecloses the majority's new preservation rule. There, the defendant argued that preservation was actually or practically unavailable to him because "the court never announced that the promised sentence was illegal and his lawyer did not display any recognition of the unlawfulness of the proposed sentence on the record" (id. at 222). The Williams Court emphatically rejected that assertion (see id. at 222-224 & n 2). As the Court explained, "we have never held, either in the plea context or elsewhere, that the defendant's lack of actual knowledge that an error has occurred, despite an opportunity to learn of the error, may excuse the defendant from having to preserve his or her claim" (id. at 223 n 2). "[S]uch a theory would swallow the preservation doctrine whole," we explained, "thereby eviscerating an essential limit on our jurisdiction, because virtually every defendant could rely on a record silent on the subject of the defendant's actual knowledge to argue that [they] did not in fact comprehend the erroneous nature of the court's actions and therefore had no obligation to object" (id. [internal citation omitted]). We therefore declined to transform the narrow exception at issue into a "sweeping knowledge-based exception to the preservation rule" (id.).
To be sure, two Judges dissented in Williams, arguing—as today's majority now holds—that because "the prosecutor, defense counsel and the court all suffered from the same misunderstanding about the plea offer, it would be unreasonable to conclude that defendant understood it" (id. at 232-233 [Rivera, J., dissenting] [internal quotation marks omitted]; see majority op at 6 [reasoning that because "the court, the prosecutor, and defense counsel all mistakenly believed that defendant faced an aggregate prison term of 45 years," defendant "could not be expected to question that misinformation"]). The Williams Court expressly disagreed and held exactly the opposite (compare 27 NY3d at 232-233 [Rivera, J., dissenting], with id. at 223 & n 2 [majority opinion]). Even assuming that some of our prior cases could arguably be read as suggesting otherwise (see majority op at 9 n 5 [describing Louree and Diaz in this way]), Williams unquestionably abrogated those cases in this respect (see 27 NY3d at 223 & n 2). Until today, that holding, drawn from decades of consistent precedent, remained good law.[FN16]
Unable to distinguish Williams on the law, the majority instead attempts to do so on the facts (see majority op at 6-7 & n 3). But on that score, too, the majority's analysis is fatally flawed. One cannot seriously contest that the defendant in Williams and defendant here had substantively identical opportunities to preserve their challenges to their pleas. In Williams, defendant's "multiple opportunities to preserve" included, "inter alia," "the court's [erroneous] statements at the plea proceeding," "the court's comments at sentencing, which offered an opening for counsel to confirm the legality of the court's sentencing options and its effect on the validity of the plea," and "the numerous adjournments . . . between the plea and sentencing proceedings, which could have allowed counsel and defendant to inquire further" (27 NY3d at 222-223). The majority fails to explain how any of these "multiple opportunities" meaningfully differs from the very same opportunities that defendant had here (id. at 222). Indeed, just as in this case, the trial court erred in Williams by "[r]elying largely on the People's apparent [erroneous] belief" respecting the defendant's permissible sentence (id. at 215), leading to an issue of which "the court was not informed . . . and never indicated that it learned of . . . on its own" (id. at 217). In all the ways that matter, Williams and this case are the same.
Undaunted, the majority endeavors to distinguish Williams by noting that the defendant there also had additional preservation opportunities that defendant here lacked (see majority op at 6-7 & n 3). But Williams did not hold that preservation is excused unless a defendant had all of the numerous preservation opportunities that the defendant in that case had at his disposal. Just the opposite: the Court explained that preservation is required where the defendant had "a practical opportunity" to object (Williams, 27 NY3d at 223 n 2 [emphasis added]). The Court merely observed that because the defendant in Williams had "multiple" such opportunities, he was miles away from satisfying this standard (id. at 222). The majority's forced reading of Williams thus is plainly wrong. And even if the majority's mischaracterization of Williams were correct, the majority fails to acknowledge that defendant plainly had "multiple opportunities to preserve" his claim, regardless of whether those opportunities were fewer in number than in Williams (id. at 222). This reality is only further demonstrated by the fact that defendants in other cases have preserved the same claim that defendant now presses—belying the majority's premise that a defendant misinformed of their maximum sentencing exposure cannot "actual[ly] or practical[ly]" object before the trial court to that error (id. at 221; see e.g. People v Johnson, 160 AD3d 516, 517-519 [1st Dept 2018] [reversing denial of defendant's motion to withdraw their plea due to the trial court's overstatement of the maximum possible sentence]; People v Iorio, 188 AD3d 1352, 1352-1353 [3d Dept 2020] [affirming denial of defendant's motion to vacate his plea on the ground that it was coerced by "the erroneous information he received regarding his maximum sentencing exposure"]; People v Wright, 196 AD2d 700, 701 [1st Dept 1993] [affirming denial of defendant's motion to vacate their plea where "(i)t does not appear that the voluntariness of defendant's plea was materially affected by the court's erroneous statement concerning the maximum legal sentence"]).
The majority's final attempt to distinguish Williams—by asserting that the court's misstatements of defendant's maximum possible sentence here supposedly "conveyed absolute complete assurance" that he faced up to [*10]45 years' imprisonment—is equally untenable (majority op at 6-7). We have never before held that preservation is excused unless the trial court voices doubt on the record as to whether it is making a mistake. That would make no sense: nearly every appellant argues that the trial court committed reversible error unwittingly. On the contrary, we have long required preservation regardless of whether "the [court's] error escaped discovery of . . . the judge, prosecutor and defense counsel" (Williams, 27 NY3d at 223 n 2, quoting id. at 231 [Rivera, J., dissenting]). It is therefore unsurprising that the majority offers no legal support for this radical proposition (see majority op at 6-7 & n 3), which effectively negates our preservation doctrine for the reasons that Williams compellingly described (see 27 NY3d at 223 n 2). The majority purports to disavow this view without explaining how its holding can be read as meaning anything different (compare majority op at 7 n 3, with id. at 11 [reasoning that "judges are [ ]capable of identifying and explaining the[ir] uncertainties" regarding a defendant's sentencing exposure]).
Though the majority may "disagree with our holding" in Williams, we "nonetheless [are] bound to follow it under the doctrine of stare decisis" (Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d 799, 819 [2015]; see People v Bing, 76 NY2d 331, 338 [1990] [stare decisis "rests upon the principle that a court is an institution, not merely a collection of individuals, and that governing rules of law do not change merely because the personnel of the court changes"]). That doctrine instructs that we "may overrule a prior decision" only "in the rarest of cases," when "an extraordinary combination of factors undermines" our precedent's "reasoning and practical viability" (Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d 1, 23 [2016]). If the majority wishes to overrule Williams for the reasons stated in that case's dissent, it should do so by engaging directly with this bedrock principle of our jurisprudence. Perhaps because it cannot do so persuasively, the majority instead nullifies our caselaw by paying it lip service while " 'distinguish[ing]' " it "to the point that it unravels" (People v Brown, 41 NY3d 279, 301 [2023, Cannataro, J., dissenting]). I cannot endorse that approach.
IV.
"Preservation—or, more precisely, the lack of preservation—frequently accounts for the disposition of criminal cases in this Court, and we enforce the preservation doctrine with equal regularity in the trial and plea contexts, remaining mindful that the necessity of preservation is the rule rather than the exception" (Williams, 27 NY3d at 219 [internal quotation marks and citation omitted]). It is no mere formality: ordinarily, "this Court best serves the litigants and the law by limiting its review to issues that have first been presented to and carefully considered by the trial and intermediate appellate courts" (Sabine v State of New York, — NY3d &mdash, &mdash, 2024 NY Slip Op 06288, *1 [2024]). As relates to plea-voluntariness claims, the majority blasts a gaping hole in this doctrine by creating an exception so large as to swallow the rule, countermanding our repeated warnings against that very result. Because defense counsel plainly had the requisite practical opportunity to raise before the trial court the claim that defendant presses for the first time on appeal, I would adhere to our precedent and affirm the Appellate Division's unanimous order.
Order reversed and case remitted to Supreme Court, Erie County, for further proceedings in accordance with the opinion herein. Opinion by Judge Rivera. Chief Judge Wilson and Judges Cannataro, Troutman and Halligan concur. Judge Singas dissents and votes to affirm in an opinion, in which Judge Garcia concurs.
Decided March 18, 2025

Footnotes

Footnote 1: Although defense counsel never affirmatively stated that they believed defendant faced up to 45 years, they never corrected the court's or the prosecution's misstatements.
Footnote 2: The prosecution's record statements that the plea offer was based on the potential 45-year sentence further ensured that defendant would not question the court's statements.
Footnote 3: We do not hold, as the dissent alleges, that the preservation exception applies unless "the trial court voices doubt on the record as to whether it is making a mistake" (dissenting op at 17). As noted, we identified numerous events in Williams that gave the defendant a practical opportunity to object to the court's error. We see no substantially analogous events in this appeal, and the dissent identifies none (see id. at 14-19).
Footnote 4: As officers of the court, neither the prosecution nor defense counsel could knowingly "make a false statement of fact or law" to the court or, in the prosecution's case, "fail to correct a false statement of material fact or law previously made" to the court (Rules of Professional Conduct [22 NYCRR 1200.0] rule 3). Although defense counsel never represented on the record that defendant faced up to 45 years, the dissent's suggestion that a CPL 440.10 motion could reveal "whether defense counsel told defendant off the record that his maximum sentence was 20 years" (dissenting op at 13) relies on speculation that defense counsel may have either chosen not to tell defendant about his maximum exposure, or told him but did not correct the court's repeated assertions of the wrong maximum exposure—scenarios that would seem unlikely in light of defense counsel's ethical obligations. This question distracts from the fact that there is no need for further record development to resolve the issue raised on appeal concerning the voluntariness of defendant's guilty plea. Pushing resolution of this issue down the road in pursuit of unnecessary factual development in a CPL 440.10 motion only risks leaving an error uncorrected and keeping the law uncertain.

Footnote 5: In Louree, defense counsel could have warned defendant that his plea involved a term of post-release supervision, and in Diaz, defense counsel could have explained the potential deportation consequences of a criminal conviction. Notably, we decided Diaz after the United States Supreme Court held in Padilla v Kentucky, 559 US 356 (2010) that constitutionally competent counsel must provide such advice. In neither case did we consider these possibilities relevant to our analysis, and the dissent's failure to acknowledge this point is telling. The dissent attempts to differentiate these cases on the basis that the court's errors implicate "the ethically untenable requirement to advise the court that their client must receive a harsher sentence" (dissenting op at 15 n 6). That view has no support in our decisions and cannot withstand even minimal scrutiny. For instance, the deportation consequences at issue in Diaz were not a "harsher sentence" to be imposed by the court but rather a consequence of the guilty plea.
Footnote 6: The dissent conveniently ignores that in a CPL 440.10 motion raising an ineffective assistance of counsel claim, the defense must include "sworn allegations" that a conviction "was obtained due to deficient attorney performance that violated the state or federal constitutions" (People v Delorbe, 35 NY3d 112, 121 [2020], quoting CPL 440.30 [1] [a]). The "proper measure of attorney performance" under the federal constitutional standard "remains simply reasonableness under prevailing professional norms" (Strickland v Washington, 466 US 668, 688 [1984]). Under the state constitutional standard, which requires that counsel provide "meaningful representation," a defendant must "demonstrate the absence of strategic or other legitimate explanations for counsel's failure" (People v Rivera, 71 NY2d 705, 709 [1988]). These are high burdens, and it is possible that a court may conclude that counsel was not ineffective for failing to correct the plea court's error, especially if that error was not obvious or if the law was unsettled. For this additional reason, limiting a defendant to raising their unpreserved challenge to the voluntariness of their guilty plea in a CPL 440.10 motion is a wholly inadequate remedy.

Footnote 7:Accordingly, the dissent's accusation that we establish a "standard [that] turns on whether the defendant themselves had 'apparent reason to question' whether the trial court was committing error" is misplaced (dissenting op at 7). We have consistently framed the preservation exception in terms of the defendant's knowledge of a court's error (see Louree, 8 NY3d at 546 ["If a trial judge does not mention postrelease supervision at the allocution, as happened here, a defendant can hardly be expected to move to withdraw (their) plea on a ground of which (they) have no knowledge"]). The dissent's isolated examples trying to claim otherwise fall flat upon scrutiny. For instance, in People v Crowder, we observed that "[n]either defendant nor defense counsel expressed any objection" to post-release supervision because the defendant was not present at certain appearances, and by default, only defense counsel could have objected (24 NY3d 1134, 1135-1136 [2015]). In Williams, we stated that "defense counsel failed to preserve defendant's claim for review" in recognition that defense counsel is tasked with preserving claims of error, even if that error involves the voluntariness of a defendant's actions.

Footnote 8: The dissent's assertion that "the court never indicated that it might impose the maximum sentence" (dissenting op at 12) injects an analysis of the merits into a discussion purportedly limited to preservation (see id. at 4 n 2). The dissent does not dispute that the court provided defendant with inaccurate information regarding his maximum exposure. Similarly, the dissent's concern that "any inadvertent error—however slight, and even if not pointed out by any party—may result in the defendant's plea being unwound" (id. at 12) is a misplaced argument on the merits. The dissent cannot dispute that a defendant may raise a properly preserved claim that a court's erroneous statement rendered their plea involuntary, even if that error were "slight." A court would then have to consider whether the plea is involuntary under the totality of the circumstances, just as we do here (see Section III, infra).

Footnote 9: No one contests the dissent's claim that plea bargains may "benefit both parties and generally mark and end to the litigation" (dissenting op at 11). Enforcing a court's independent obligation to ensure that a plea is voluntary, as we do here, reduces the risk that an appellate court will vacate a plea based on an error that a court could easily have avoided. The dissent's rule would weaken that enforcement and cut against the policy goals they claim to support. 

Footnote 10: Indeed, defendant's case supports why someone would be unlikely to accept such risks. Defendant was sentenced in 2019. He did not prevail before the Appellate Division, and although we granted leave—which a defendant cannot accept as a given when they plead guilty—we decide his case in 2025, six years after sentencing, and he has been incarcerated the whole time.

Footnote 11: In 2020, the First Department held that preservation is excused where the defendant argues that the court's misstatement of their sentencing exposure rendered their guilty plea involuntary, reasoning in conclusory fashion that preservation is "actual[ly] or practical[ly] unavailab[le]" to such a defendant because they "can hardly be expected to move to withdraw [their] plea on a ground of which [they] ha[ve] no knowledge" (People v Joseph, 191 AD3d 148, 149-150 [1st Dept 2020]). The Third Department, like the Fourth, rejects this approach (see e.g. People v Smith, 49 AD3d 1032, 1033 [3d Dept 2008]). The Second Department has ruled inconsistently on this issue but has recently required preservation in this context (compare e.g People v Gaity, 216 AD3d 667, 668 [2d Dept 2023] [rejecting as "partially unpreserved" the defendant's claim that his plea was involuntary due to "inaccurate information regarding his possible sentence exposure"], and People v Davis, 186 AD3d 852, 852 [2d Dept 2020] [rejecting as unpreserved the defendant's claim that his plea was involuntary because "County Court misinformed him regarding the maximum enhanced sentence"], with e.g. People v Keller, 168 AD3d 1098, 1098-1099 [2d Dept 2019] [excusing preservation where the defendant argued that his plea was involuntary because "he was misinformed about the maximum sentence"]).

Footnote 12: Because I would reject defendant's claim as unpreserved, I express no view on its merits.

Footnote 13: We have also applied this exception in certain limited instances where the trial court fails to tell the defendant that they may be deported as a result of their plea, recognizing deportation's uniquely "punitive qualities not entirely unlike the core components of a criminal sentence" (People v Peque, 22 NY3d 168, 191 [2013 plurality]).

Footnote 14: The majority rightly observes that defense attorneys are "officers of the court" (majority op at 8 n 4). They are also tasked with the equally vital duty to zealously advocate on behalf of their clients. Moving forward, from defense counsel's perspective, choosing not to correct on the record the court's misstatement of their client's sentencing exposure is a no-lose proposition. Counsel can simply advise their client off the record of their actual sentencing exposure—thus retaining a viable appellate challenge to their client's plea, based on an error that did not cause their client any actual confusion respecting their maximum possible sentence. I would not place defense attorneys in the fraught position of deciding whether to object to a trial-court error that inures to their client's benefit if left uncorrected on the record. The majority's new standard imposes that ethical quandary.

Footnote 15: The principal exception, for " 'mode of proceedings' errors"—i.e., those "encompass[ing] only the most fundamental flaws that implicate jurisdictional matters or rights of a constitutional dimension that go to the very heart of the process"—plainly does not apply here, and no party argues otherwise (Hanley, 20 NY3d at 604 [internal quotation marks, citation, and ellipsis omitted]).

Footnote 16: In any event, the majority's citations to cases where the court failed to advise the defendant of a component of their sentence are inapposite at their core. We have never imposed on defense counsel the ethically untenable requirement to advise the court that their client must receive a harsher sentence. That concern has no application here.