Matter of Juan Z. (Juan Z.) (2025 NY Slip Op 03674)

Matter of Juan Z. (Juan Z.)

2025 NY Slip Op 03674

Decided on June 18, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 18, 2025

CV-24-0384
[*1]In the Matter of Juan Z., Alleged to be a Juvenile Delinquent. Tompkins County Attorney, Respondent; Juan Z., Appellant.

Calendar Date:April 23, 2025

Before:Clark, J.P., Aarons, Ceresia, Fisher and McShan, JJ.

Thomas G. Shannan, Ithaca, for appellant.
Maury B. Josephson, County Attorney, Ithaca (Holly Mosher of counsel), for respondent.

Fisher, J.
Appeal from an order of the Family Court of Tompkins County (Scott Miller, J.), entered February 16, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 3, to adjudicate respondent a juvenile delinquent and directed respondent to pay restitution.
In August 2023, a juvenile delinquency petition was filed charging respondent (born in 2005) with committing acts which, if committed by an adult, would constitute the crimes of criminal mischief in the second degree, burglary in the first degree, burglary in the second degree, endangering the welfare of a child and menacing in the second degree, stemming from two separate incidents between respondent and his sister (hereinafter the victim). The first incident related to physical damage to the victim's vehicle that was caused by respondent in June 2023 and resulted in the charge for criminal mischief in the second degree. The remaining charges related to the second incident occurring a week later when respondent entered the victim's residence through her window and started a physical altercation with her involving a knife, causing injury to her and her one-year-old child. A denial was entered at the initial appearance, where it was represented that the victim was seeking restitution for the property damage to her vehicle during the first incident; it was subsequently determined that such amount was $500, constituting the victim's unreimbursed insurance deductible. The petition did not recite any other items or incidents of property damage.
Following several appearances and off-the-record conversations between counsel, respondent agreed to enter an admission, in full satisfaction of the petition, to endangering the welfare of a child as pleaded in the petition. Family Court then engaged in an allocution of respondent, where he was advised, understood and voluntarily waived his right to a fact-finding hearing after discussing it with counsel, acknowledged the range of possible dispositional orders and admitted the acts to which he was entering the admission (see Family Ct Act § 321.3 [1]). Family Court ordered a predisposition investigation (hereinafter PDI) and counsel for both parties confirmed the understanding that, "if there's a disagreement about any restitution that is recommended [in the PDI], we will have an evidentiary hearing on the restitution issue if there's no agreement." Based on such assurances, Family Court accepted the admission and scheduled a dispositional hearing. Thereafter, respondent objected to the recommendation of restitution in the PDI report which included the insurance deductible related to the criminal mischief charge during the first incident, and a new claim for property damage to a television caused during the second incident. Following a restitution hearing, Family Court imposed restitution on respondent for the insurance deductible and television in the total sum of $902.79, based on the evidence adduced at the hearing and the [*2]terms of the admission. Respondent appeals.[FN1]
Respondent contends that Family Court erred in ordering restitution because he pleaded to a charge that did not include allegations of property damage in the petition, he did not admit to any allegations related to property damage during his allocution, and there was no recorded agreement to accept an admission in exchange for restitution on all charges. We find these contentions to have merit. Family Court may order a person who has been adjudicated a juvenile delinquent to make "restitution in an amount representing a fair and reasonable cost to replace the property [or] repair the damage caused by" him or her (Family Ct Act § 353.6 [1] [a]). In doing so, Family Court has "broad discretion" in determining the proper disposition in a juvenile delinquency proceeding (Matter of Orazio A., 81 AD3d 1104, 1106 [3d Dept 2011]), but, as a court of limited jurisdiction, remains constrained to exercise the powers granted to it by statute (see Matter of Josefina O. v Francisco P., 213 AD3d 1158, 1159 [3d Dept 2023]). Unlike the Penal Law, which permits restitution for damage to property that was not alleged in the charging document but still "part of the same criminal transaction" (Penal Law § 60.27 [4] [a]), there is "no parallel provision in Family Court Act § 353.6," thus restitution is generally limited to those items recited in the petition (Matter of Jared G., 39 AD3d 1248, 1249 [4th Dept 2007]; see Matter of Keith Z., 195 AD2d 729, 729 [3d Dept 1993]; see also Family Ct Act § 303.1 [1]). To this further point, "a juvenile may be required to pay restitution for a charge to which he or she did not admit only where there is a recorded agreement to accept an admission in exchange for restitution" (Matter of Rashid F., 300 AD2d 960, 962 [3d Dept 2002]).
Here, respondent pleaded to endangering the welfare of a child as alleged in the petition, which did not include a recitation of any items damaged during the commission of this offense or as amplified by petitioner's bill of particulars, and therefore cannot serve as the basis to impose restitution on respondent (see Matter of Joshua R.S., 103 AD3d 1228, 1229 [4th Dept 2013]; Matter of Jared G., 39 AD3d at 1249; Matter of Frank M., 219 AD2d 877, 877 [4th Dept 1995]). Nor did respondent admit to any allegations of property damage during his allocution or at the restitution hearing, where he did not testify (see Matter of Rashid F., 300 AD2d at 962; compare Matter of Isaac L., 142 AD3d 1263, 1264 [3d Dept 2016]; Matter of Michael V., 92 AD3d 1115, 1116 [3d Dept 2012], lv denied 19 NY3d 804 [2012]). Therefore, whether restitution may be properly imposed on respondent turns on whether there was a recorded agreement to accept an admission in exchange for restitution on all charges (see Matter of Rashid F., 300 AD2d at 962).
We find that there is not. Although it is true, unlike in Matter of Rashid F. which is heavily relied upon by respondent, that restitution had [*3]been raised at the very first appearance, it is also true that the parties never reached an agreement on whether respondent would pay restitution and what amount. Indeed, the initial offer made at the second appearance in August 2023 included entering an admission to the charge from the first incident relating to criminal mischief — which did include allegations of property damage in the petition — and that restitution could either be agreed upon by the parties or after a hearing to determine "should any restitution be ordered or if it should be what's the appropriate amount" (emphasis added). At the next appearance in October 2023, the attorneys acknowledged that they had an off-the-record conversation with respect to the offer, which would now be an admission to endangering the welfare of a child — which did not include any allegations of property damage. The allocution by Family Court did not include any reference to restitution or whether respondent understood or agreed to restitution on any of the charges, except for confirming with both counsel that there would be a hearing if the parties cannot agree to the recommendations in the PDI report. Thus, up and until this point, Family Court and the parties had expressly acknowledged that there had been no agreement as to restitution and they would wait to decide this issue until the PDI report was received — which could recommend restitution up to the statutory cap of $1,500 per incident, or none at all (see Family Ct Act § 353.6 [1] [a]; see generally Matter of Joel M., 240 AD2d 747, 748 [2d Dept 1997]). Nevertheless, at the first appearance after the PDI report had been received and when respondent raised an objection, Family Court and petitioner adopted the position that restitution had already been agreed to but that it was merely a manner of determining the amount. In placing their respective positions on the record, counsel for each party referenced plea negotiations and off-the-record conversations where they materially disagreed over whether restitution was intended to be for all charges regardless of what respondent ultimately agreed to. Despite some conversations taking place off the record, Family Court still concluded that there had been an agreement for restitution on all charges and proceeded over respondent's objection with the restitution hearing.
Contrary to the determination of Family Court, our careful review of the record fails to reveal such a recorded agreement (see Matter of Rashid F., 300 AD2d at 962). We are unable to find, and petitioner does not point to, any part of the record where restitution had been definitively agreed upon by the parties other than the possibility of a future hearing to determine if "any" restitution would be ordered if the parties could not agree. Since there is limited ability to withdraw an admission in a juvenile delinquency proceeding (see Family Ct Act § 321.4), once it became apparent that the parties had a disagreement over the terms of the [*4]admission — particularly due to off-the-record conversations — it was incumbent on Family Court to clarify and develop the record (see generally People v Scott, ___ NY3d ___, ___ 2025 NY Slip Op 01562, *2-3 [2025]; People v Busch-Scardino, 158 AD3d 988, 989 [3d Dept 2018]; Matter of Carlos S., 5 AD3d 1051, 1052 [4th Dept 2004] [noting Family Court's "vital role in clarifying confusing" statements on the record (internal quotation marks and citation omitted)], lv denied 2 NY3d 707 [2004]). Despite respondent being present and having an opportunity to be heard, no inquiry was made into respondent's understanding of his admission and the conditions associated therewith. Although it is true that Family Court did offer respondent an opportunity to move to withdraw his admission, respondent declined to do so. Ultimately, Family Court is charged with issuing "an appropriate order of disposition for any person who is adjudged a juvenile delinquent" (Family Ct Act § 301.1), and therefore must protect the record when it is unclear without advocating for one side over the other — particularly involving off-the-record conversations (see generally Matter of Kyle FF., 85 AD3d 1463, 1464 [3d Dept 2011]; Matter of Yadiel Roque C., 17 AD3d 1168, 1169 [4th Dept 2005]). Accordingly, since the record falls short of demonstrating a recorded agreement whereby respondent agreed to accept an admission in exchange for restitution on all charges, it was an error for Family Court to impose any restitution on respondent under these circumstances (see Matter of Rashid F., 300 AD2d at 962-963; Matter of Frank M., 219 AD2d at 877). We have examined the remaining contentions of the parties and have found them to be without merit or rendered academic.
Clark, J.P., Aarons, Ceresia and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as ordered restitution; and, as so modified, affirmed.

Footnotes

Footnote 1: At oral argument, counsel for petitioner conceded that the award of restitution for the television was improper.